**David Lee RUSHER, Plaintiff-Appellee,**

v.

**Floyd E. ARNOLD, Warden, United States Penitentiary, Lewisburg, Pennsylvania, Respondent-Appellant.**

No. 76–1313.

United States Court of Appeals, Third Circuit.

Argued Jan. 3, 1977.

Decided Feb. 22, 1977.

John M. Humphrey, Candor, Youngman, Gibson & Gault, Williamsport, Pa., for plaintiff-appellee.

S. John Cottone, U. S. Atty., Harry A. Nagle, Asst. U. S. Atty., Scranton, Pa.,

**28.** *Id.* at § 531(b).

Richard L. Thornburgh, Asst. Atty. Gen., George W. Calhoun, Mitchell B. Dubick, Dept. of Justice, Washington, D. C., for respondent-appellant.

## OPINION OF THE COURT

Before ALDISERT and WEIS, Circuit Judges, and HUYETT,* District Judge.

HUYETT, District Judge.

The Warden of the U. S. Penitentiary at Lewisburg brings this appeal from an Order of the District Court for the Middle District of Pennsylvania granting a federal prisoner's petition, filed pursuant to 28 U.S.C. § 2255. The District Court ordered the Warden to restore to petitioner 62 days of good time that the Good Time Forfeiture Board had ordered forfeited. The question presented is whether the Bureau of Prisons is required to restore good time forfeited by a prisoner for violation of an institutional rule forbidding escape where the prisoner subsequently is acquitted on criminal charges of escape flowing from the same incident.

### I.

Petitioner David Lee Rusher was serving concurrent three-year prison terms at Allenwood Federal Prison Camp following convictions for bail jumping[1] and interstate transportation of forged securities.[2] On March 16, 1975, prison authorities discovered that Rusher was absent from the prison without permission. On the morning of the same day agents of the Federal Bureau of Investigation arrested him at his home. Prison authorities promptly charged Rusher administratively for the escape, and on March 18 he appeared before the Good Time Forfeiture Board which met in the Union County Jail, Lewisburg, Pennsylvania, where Rusher was then confined. Rusher admitted that he had been absent

without permission, but he claimed that he had simply gone home to attend to pressing family matters and that he had intended to return to prison. The Board found him guilty of escape and ordered that 62 days of good time that Rusher had accumulated be forfeited. On March 25, 1975, an indictment was returned in the Middle District of Pennsylvania charging petitioner with escape from federal custody in violation of 18 U.S.C. § 751(a) (Criminal No. 75–78, M.D. Pa.), and on June 13, 1975, petitioner was acquitted following a jury trial. He then applied to the Bureau of Prisons for restoration of the 62 days good time that earlier had been forfeited. Upon being informed by the Warden that his acquittal on the criminal charges did not undo the previously imposed administrative discipline, he filed his petition under 28 U.S.C. § 2255.

The district judge, relying on his earlier decision in *Barrows v. Hogan,* 379 F.Supp. 314 (M.D.Pa.1974), granted Rusher's petition and ordered the Bureau of Prisons to restore the 62 days of good time. In *Barrows* the circumstances were virtually identical. A federal prisoner was disciplined by the Good Time Forfeiture Board of the Federal Penitentiary at Lewisburg for assaulting a prison employee. He was subsequently indicted, tried and acquitted in federal district court for assaulting "an employee of a United States correctional institution."[3] When the Warden declined to restore the good time which earlier had been ordered forfeited by the Board, Barrows petitioned the district court for relief under 28 U.S.C. § 2255. Drawing support from *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), the Court ordered the prison authorities to restore Barrows' good time, ruling that:

> The holding of a jury of 12 men and women is a final determination against the Government on the question of whether Petitioner assaulted the officer.

---

* Honorable Daniel H. Huyett, 3rd of the United States District Court for the Eastern District of Pennsylvania, sitting by designation.

1. 18 U.S.C. § 3150.

2. 18 U.S.C. § 2314.

3. 18 U.S.C. § 111.

In view of the judicial determination that this prisoner is not guilty of the offense charged, it is impermissible for the prison administration to determine otherwise and punish the prisoner for an offense as to which he has been acquitted. 379 F.Supp., at 316.

Because we do not believe that an acquittal on criminal charges forecloses the prison administration from imposing disciplinary measures for infraction of prison rules, even though both the indictment and the prison discipline arise from the same incident, we reverse.

## II.

██ Rusher has no quarrel with the procedures by which his prison discipline was adjudicated. *See Wolff v. McDonnell, supra.* Nor does he question the substantive correctness of the decision of the Board when it was first made. The brunt of his attack is the correctness of the decision of the prison officials not to restore to him the forfeited good time. The unarticulated premise undergirding the Order of the District Court appears to be that notions of fundamental fairness embodied in the due process clause of the Fifth Amendment are violated by permitting a federal prison to discipline an inmate for a violation of prison rules where the prisoner is subsequently acquitted on criminal charges stemming from the same incident.

In *Wolff v. McDonnell, supra,* the Supreme Court held that state prisoners have a liberty interest in accumulated good time credits, and that these credits may not be revoked by the state for serious misconduct without according to the prisoner certain minimum procedural requirements of due process of law. 418 U.S. at 558, 94 S.Ct. 2963. The Court determined what process is "due" by reference to its evaluation of the balance of state and prisoner interests in the proceeding. In deciding what procedural protections were required, the Court compared the stake of the prisoner facing a

loss of good time credits with that of the parolee or probationer facing revocation proceedings, concluding that "it is qualitatively and quantitatively different . . ." *Id.* at 561, 94 S.Ct. at 2977. "For the prison inmate, the deprivation of good time is not the same immediate disaster that the revocation of parole is for the parolee." *Id.* Moreover, the interests of the state in the procedures employed to assess facts in prison disciplinary hearings were deemed to be substantially weightier in several respects than those employed in the parole revocation context.[4] *Id.* at 561–62, 94 S.Ct. 2963. *See also Baxter v. Palmigiano,* 425 U.S. 308, 318–19, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976).

Similarly, fundamental differences in the balance of state and individual interests between a criminal trial and a prison disciplinary proceeding persuade us that there is no fundamental unfairness in a procedure whereby a prisoner is punished administratively for the same conduct that resulted in an acquittal on criminal charges. Nowhere is the individual's liberty interest greater than in the face of a criminal charge. A presumptively innocent person stands to suffer loss of freedom and the stigma of being branded a convicted felon. *In re Winship,* 397 U.S. 358, 363–64, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). The Government's interest in punishing criminals is subordinated in every rational respect to the conflicting interests of the accused. On the other hand, a prisoner has already suffered both the drastic loss of liberty and the unenviable stigma that accompany a conviction and a prison term. The Government, through the Bureau of Prisons, is charged with the duty of administering the correctional process, and, as part of its responsibility to punish and rehabilitate convicted criminals, it must engage in the often delicate task of enforcing its rules and regulations and disciplining the uncooperative in the prison population. Congress has elected to reward cooperative prisoners with good time allowances for faithful observance of prison rules and regulations. 18 U.S.C.

---

4. *Cf. Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) [probation revocation]; *Gagnon v. Scarpelli,* 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973) [parole revocation].

§ 4161.[5] Congress also permits prison authorities to forfeit earned good time for rules infractions, 18 U.S.C. § 4165,[6] and to restore forfeited good time in its discretion. 18 U.S.C. § 4166.[7]

The Fifth Amendment accords the Attorney General considerably more flexibility in carrying out his correctional duties than in securing criminal convictions in the first instance. This flexibility is manifested in two respects. First, in order to minimize the risk of mistaken convictions, the Government bears the burden in criminal cases of proving every element of the offense beyond a reasonable doubt. *Mullaney v. Wilbur,* 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975). By marked contrast, the due process clause imposes no extraordinary burden of proof on the Government in connection with meting out discipline to its already convicted prisoner for flouting prison rules. The Good Time Forfeiture Board is constitutionally entitled to conclude by less than proof beyond a reasonable doubt that prison rules have been violated. Thus Rusher's acquittal means no more than that the Government failed to persuade the jury beyond a reasonable doubt that Rusher had escaped from federal custody. The acquittal is not conclusive of the factual dispute before the Board on the issue of whether Rusher had escaped within the meaning of prison rules.

Our conclusion that the inability of the Government to meet its burden of persuasion in criminal cases is no bar to other non-criminal sanctions based upon a less stringent burden is reinforced by authority in two similar contexts. In *United States v. Chambers,* 429 F.2d 410 (3d Cir. 1970) (per curiam), a district judge sentenced defendant Chambers to a term of probation. Immediately after the sentencing, Chambers was apprehended on state criminal charges. While the state charges were pending, the sentencing judge revoked Chambers' probation and sentenced him to a term of imprisonment for violating the conditions of his probation. Thereafter, the defendant was acquitted on the state charges, and he sought a vacation of the federal prison sentence on the theory that the state court acquittal nullified all factual support for the revocation of probation. On appeal, this Court held that, to the extent that the revocation was based on a finding by the sentencing judge that the defendant had in fact violated state law, the state acquittal, founded as it was on the state's failure to meet the greater burden of proof, had no bearing on the finding of guilt for revocation of probation purposes. *See also United States v. Manuszak,* 532 F.2d 311 (3d Cir. 1976).

Likewise, an acquittal on charges of willfully and knowingly smuggling undeclared merchandise into the United States with intent to defraud the Government in violation of 18 U.S.C. § 545, does not bar subsequent forfeiture proceedings against the same merchandise as smuggled goods. In *One Lot of Emerald Cut Stones v. United States,* 409 U.S. 232, 93 S.Ct. 489, 34 L.Ed.2d 438 (1972) (per curiam), as an independent ground for its decision the Supreme Court relied on the differing burdens of proof in criminal and civil cases:

> ". . . the difference in the burden of proof in criminal and civil cases precludes application of the doctrine of collateral estoppel. The acquittal of the criminal charges may have only represented ' "an adjudication that the proof was not suffi-

---

**5.** Section 4161 reads as follows:

Each prisoner convicted of an offense against the United States and confined in a penal or correctional institution for a definite term other than for life, whose record of conduct shows that he has faithfully observed all the rules and has not been subjected to punishment, shall be entitled to a deduction from the term of his sentence beginning with the day on which the sentence commences to run

. . ..

**6.** Section 4165 reads as follows:

If during the term of imprisonment a prisoner commits any offense or violates the rules of the institution, all or any part of his earned good time may be forfeited.

**7.** Section 4166 reads as follows:

The Attorney General may restore any forfeited or lost good time or such portion thereof as he deems proper upon recommendation of the Director of the Bureau of Prisons.

cient to overcome all reasonable doubt of the guilt of the accused." ' *Helvering v. Mitchell,* 303 U.S. 391, 397 [58 S.Ct. 630, 632, 82 L.Ed. 917] (1938). As to the issues raised, it does not constitute an adjudication on the preponderance-of-the-evidence burden applicable in civil proceedings." 409 U.S. at 235, 93 S.Ct. at 492.[8]

The second reason for permitting prison authorities to discipline conduct for which a prisoner has been tried and acquitted lies in the fact that a very different record may be compiled at the disciplinary hearing. In the first place, some aspects of procedural due process that are available in a prisoner's defense at the criminal trial are not required at the disciplinary hearing. A prisoner has no right to representation by counsel at his hearing, *Baxter v. Palmigiano,* 425 U.S. at 314–15, 96 S.Ct. 1551, nor does he have the right to confront and cross-examine witnesses against him. *Wolff v. McDonnell,* 418 U.S. at 567–69, 94 S.Ct. 2963. Furthermore, there exist various rules of evidence which prohibit the use of certain probative evidence at criminal trials; yet many of these rules have no application to prison disciplinary hearings. For example, in *Baxter, supra* at 316–20, 96 S.Ct. 1551, the Supreme Court held that the fact that state prison authorities drew adverse inferences from a prisoner's silence at a disciplinary hearing did not of itself offend the due process clause of the Fourteenth Amendment, even though such in-

ferences would be patently unconstitutional in a criminal context. Other courts have held that the fruits of unlawful searches and seizures are admissible in certain non-criminal proceedings, *e. g., United States v. Iannece,* 405 F.Supp. 599, 606 (E.D.Pa.1975), *aff'd on other grounds sub nom., United States v. Manuszak,* 532 F.2d 311 (3d Cir. 1976) [probation revocation hearing], *United States ex rel. Sperling v. Fitzpatrick,* 426 F.2d 1161 (2d Cir. 1970) [parole revocation hearing]. There is also authority for the use of confessions obtained in violation of *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), *see Chavez-Raya v. Immigration and Naturalization Service,* 519 F.2d 397 (7th Cir. 1975) [deportation hearing], and the use of testimony compelled under a grant of immunity from criminal prosecution, *Childs v. McCord,* 420 F.Supp. 428 (D.Md.1976) [professional disciplinary hearing]. Moreover, in the recent decision in *Zannino v. Arnold,* 531 F.2d 687, 692 (3d Cir. 1976), this Court found no fault with the Parole Board's reliance on hearsay evidence in denying parole.[9]

### III.

The judgment of the District Court will be reversed.

8. Rusher lays no claim to the benefit of the collateral estoppel doctrine. Indeed he could not do so since he seeks to use an acquittal to invalidate the factual basis for a *prior* administrative finding. However, the reasoning of the Supreme Court in *One Lot of Emerald Cut Stones, supra,* is no less persuasive where Rusher claims that application of the substantive standards of fairness embodied in the due process clause of the Fifth Amendment dictate that a determination of facts favorable to a criminal defendant nullifies an earlier unfavorable determination in an administrative proceeding that imposed a less rigorous burden of proof on the Government.

9. This may be just such a case where different records compiled before the different factfinders explain the finding that Rusher did not "escape" for purposes of criminal liability and

that he did "escape" for purposes of prison discipline. Although we do not have before us the transcript of the criminal trial, Rusher and the Bureau of Prisons are in agreement that the reason for the acquittal was a successful entrapment defense. Rusher did not deny leaving the prison without permission at his trial; instead he testified that he was lured away by a Government informant. While these circumstances may have been sufficient to submit the entrapment question to a jury, the Good Time Forfeiture Board certainly was under no compulsion to pay heed to an entrapment defense. Indeed it appears that the entrapment defense was not presented to the Bureau of Prisons until Rusher took an administrative appeal from the adverse decision of the Good Time Forfeiture Board. Compare App. B8 with App. B14.