UNITED STATES of America,
Plaintiff-Appellee,

v.

William D. WHITE and Terry L. Keno,
Defendants-Appellants.

No. 78–5083.

United States Court of Appeals,
Fifth Circuit.

Feb. 26, 1979.

P. Bruce Kirwan, Federal Public Defender, Atlanta, Ga., for defendants-appellants.

J. Richard Young, Atlanta, Ga., for William D. White.

Glen A. Garrett, Atlanta, Ga., for Terry L. Keno.

William L. Harper, U. S. Atty., Gale McKenzie, Asst. U. S. Atty., Atlanta, Ga., for plaintiff-appellee.

Before BROWN, Chief Judge, and TUTTLE and THORNBERRY, Circuit Judges.

THORNBERRY, Circuit Judge:

Terry Keno was office manager for the Atlanta, Georgia, warehouse of Alside, Inc., a subsidiary of United States Steel Corporation. Alside manufactured and sold aluminum, steel, and fiberglass products for the home improvement industry. Ward Broussard was an Alside salesman working out of the Atlanta warehouse. William White was a close friend of Keno. In 1972 Keno and Broussard set up an account under the name of Georgia Remodeling, with White listed as firm president. Under Alside policy, Georgia Remodeling was entitled to a rebate on all purchases in order to offset discounts offered by Alside's competitors.

In 1976 Alside filed a state civil suit against Keno, Broussard, and White, alleg-

ing that they had employed Georgia Remodeling as a dummy account in order to skim off the amount of the rebated competitive discount.[1] This scheme became the focus of a federal grand jury investigation, and fifty count indictments were returned against the three.[2] After a jury trial, Keno and White were convicted on all counts.[3] They now appeal asserting separate contentions. We affirm.

## I. White

A. White claims that his counsel in the civil trial, retained by Keno, failed to inform him of his fifth amendment right against self-incrimination and allowed him to testify in order to exculpate Keno, and that this amounted to ineffective assistance of counsel in violation of the sixth amendment[4] and deprivation of his fifth amendment right against self-incrimination. We fail to see any error in the admission of this testimony.

The crux of White's argument is that uncounseled inculpatory testimony in a civil case given in ignorance of the fifth amendment privilege is inadmissible in a subsequent criminal case as violative of due process. To the extent this argument could

be construed to advocate *Miranda*-like warnings we reject it. *See United States v. Vecchiarello,* 187 U.S.App.D.C. 1, 569 F.2d 656 (1977); *United States v. Cecil,* 457 F.2d 1178 (8 Cir. 1972); *Hale v. U. S.,* 406 F.2d 476 (10 Cir. 1969), *cert. denied,* 395 U.S. 977, 89 S.Ct. 2129, 23 L.Ed.2d 765 (1970). In the absence of the special circumstances of custodial interrogation, the costs of such a prophylactic outweighs its utility. Moreover, the failure to inform White of his fifth amendment privilege in the civil context does not make the testimony given in the civil case involuntary. *Cf. Cole v. Florida,* 413 F.2d 1046 (5 Cir. 1969) (voluntariness of confession pre-*Miranda* based on totality of circumstances). White in fact admitted that he wanted to testify in order to rebut Alside's allegations.[5] He also was aware that an indictment was pending at the time of the civil trial, and he does not contend that he did not know that the testimony could be used against him in the criminal trial. Finally, there is no indication that White was in any way compelled to take the stand. Admission of testimony given under these circumstances is not violative of due process.[6]

B. During the criminal trial, the United States introduced a passbook cover-

---

1. Keno contended that the Georgia Remodeling account was opened at the direction of a superior to provide a vehicle for extending credit to customers who had been denied credit by the main office of Alside in Akron, Ohio.

2. The indictments contained forty-nine counts of mail fraud in violation of 18 U.S.C. § 1341, and one count of conspiracy to commit mail fraud under 18 U.S.C. § 371.

3. Keno received concurrent sentences of four years on each count. White received three year concurrent sentences on each count. Broussard pled nolo contendere; his sentence does not appear in this record.

4. White has not adduced, nor have we found, a case in which the right to effective assistance of counsel has been extended under the aegis of the sixth or fourteenth amendment to a civil proceeding that was not analogous to a criminal prosecution. This case, in which private parties are litigating the possibility of civil liability, is not in furtherance of the criminal process, and we can perceive no justification for importing into such a civil case the stringent

safeguards the Constitution provides in criminal or quasi-criminal proceedings.

White's counsel at the criminal trial, Young, expressly disclaimed that he was attacking the competence of Garrett, the state trial counsel, during the suppression hearing. Record, Vol. I at 215. This assertion effectively foreclosed inquiry, under *United States v. Woodall,* 438 F.2d 1317 (5 Cir. 1970) (en banc), *cert. denied,* 403 U.S. 933, 91 S.Ct. 2262, 29 L.Ed.2d 712 (1971), into Garrett's remembrance of the facts surrounding White's testimony. In light of our discussion of the merits, we need not determine whether counsel's actions amounted to a waiver of this contention.

5. Record, Vol. I at 211.

6. There is some question whether White was in fact ignorant of the privilege. His contention is that, although he did know he could invoke the privilege in a criminal context and although Garrett had invoked the fifth during depositions, he did not know he could invoke the privilege during a civil trial. White admitted at the suppression hearing, however, that he was not affirmatively stating that he was not in-

ing a $50,000 savings account of which White was the beneficiary. This evidence was proffered as subsequent unexplained wealth.[7] White contends on appeal that the admission of such evidence was irrelevant to his guilt because he was merely a beneficiary of the savings account without a vested interest under state law, and therefore, he did not "possess" any subsequent unexplained wealth.

In the present case, however, the United States charged that White and Keno conspired in a scheme to defraud, the natural consequence of which would be an increase in the wealth of the conspirators. The fact that Keno retained the legal title to the funds did not make such increase in wealth irrelevant to White's guilt, in light of the facts that White was the beneficiary, that Keno and White owned other property in common, that they were close friends and housemates, and that they were admitted, albeit professedly innocent, participants in the Georgia Remodeling ploy. *See United States v. Crisp*, 435 F.2d 354 (7 Cir. 1970), *cert. denied*, 402 U.S. 947, 91 S.Ct. 1640, 29 L.Ed.2d 116 (1971); *United States v. Smith*, 428 F.2d 1183 (4 Cir.), *cert. denied*, 400 U.S. 907, 91 S.Ct. 149, 27 L.Ed.2d 145 (1970). *Cf. Self v. United States*, 249 F.2d 32 (5 Cir. 1959). Although Keno was caught "holding" the money, the existence of this account was not irrelevant as to his coconspirator. Submission of this evidence to the jury did not amount to an abuse of discretion.

## II. Keno

■ A. Keno contends that being forced to go to trial in a civil case while criminal charges arising out of the same conduct were pending forced him to choose between preserving his fifth amendment privilege and losing the civil suit. It appears to us, however, that Keno overstates his dilemma. He was not forced to surrender his privilege against self-incrimination in order to prevent a judgment against him; although he may have been denied his most effective defense by remaining silent,[8] there is no indication that invocation of the fifth amendment would have necessarily resulted in an adverse judgment.

The Supreme Court has recently addressed a similar problem in *Baxter v. Palmigiano*, 425 U.S. 308, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976). In *Baxter*, plaintiff asserted that a Rhode Island rule allowing the fact-finder in a prison disciplinary proceeding to draw an adverse inference from a failure to testify derogated his fifth amendment privilege. The Court rejected this argument, finding that this rule was not an invalid attempt to penalize the exercise of the privilege. Justice White wrote for the majority,

. . . a prison inmate in Rhode Island electing to remain silent during his disciplinary hearing, as respondent Palmigiano did here, is not in consequence of his silence automatically found guilty of the infraction with which he has been charged. Under Rhode Island law, disciplinary decisions "must be based on substantial evidence manifested in the record of the disciplinary proceeding." *Morris v. Travisono*, 310 F.Supp. 857, 873 (R.I.1970). It is thus undisputed that an inmate's silence in and of itself is insufficient to

---

formed, but that at the time of the hearing he *could not remember* whether he had been informed. White's testimony is, at best, equivocal, and the district court could have properly discounted it.

7. "Where there is other evidence of the guilt of the accused and the crime is of such a nature that the acquisition of money may be regarded as a natural or ordinary result of its perpetration, evidence is admissible of the sudden acquisition of money by the defendant . . . at or subsequent to the time the offense was committed, although the source of the money is not definitely traced or identified by the prosecution."

*United States v. Manning*, 440 F.2d 1105, 1110 (5 Cir.), *cert. denied*, 404 U.S. 837, 92 S.Ct. 125, 30 L.Ed.2d 69 (1971) (quoting Anno., 91 A.L.R.2d 1046, 1049; *United States v. Jackskion*, 102 F.2d 683 (2 Cir.), *cert. denied*, 307 U.S. 635, 59 S.Ct. 1032, 83 L.Ed. 1517 (1939)).

8. This is assuming that Keno's explanation and his credibility would have a positive effect on the jury.

support an adverse decision by the Disciplinary Board. In this respect, this case is very different from the circumstances before the Court in the *Garrity* [*v. New Jersey*, 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562]–*Lefkowitz* [*v. Turley*, 414 U.S. 70, 94 S.Ct. 316, 38 L.Ed.2d 274] decisions, where refusal to submit to interrogation and to waive the Fifth Amendment privilege, standing alone and without regard to the other evidence, resulted in loss of employment or opportunity to contract with the State. There, failure to respond to interrogation was treated as a final admission of guilt. Here, Palmigiano remained silent at the hearing in the face of evidence that incriminated him; and, as far as this record reveals, his silence was given no more evidentiary value than was warranted by the facts surrounding his case.

*Id.* at 1557–58.

Similarly, there is no indication that invocation of the fifth amendment in this case would have resulted in an adverse judgment. Alside, as plaintiff, was put to the proof of its case, *see Brown v. Techdata Corp.*, 238 Ga. 622, 234 S.E.2d 787 (1977), and there is no indication that under Georgia law silence on the part of defendant would compel a verdict for plaintiff. Since there is no forfeiture of any property or benefit, we can see no impermissible effect on Keno's fifth amendment privilege in the present case. *See also Arthurs v. Stern*, 560 F.2d 477 (1 Cir. 1977), *cert. denied*, 434 U.S. 1034, 98 S.Ct. 768, 54 L.Ed.2d 782 (1978); *DeVita v. Sills*, 422 F.2d 1172 (3 Cir. 1970); *United States v. Sloan*, 388 F.Supp. 1062 (S.D.N.Y.1975); *Keene v. Rodgers*, 316 F.Supp. 217 (D.Me.1970).

■ Keno also asserts that the state trial court effectively compelled waiver of self-incrimination in ordering him to respond to a motion for summary judgment. As an initial matter, we accept the proposition that a grant of summary judgment merely

because of the invocation of the fifth amendment would unduly penalize the employment of the privilege. *See* 8, C. Wright & A. Miller, Federal Practice & Procedure § 2018, at 148 (1970). There is no indication in the federal or state court records that the state judge actually foreclosed invocation of the privilege. From what we can determine, the state judge merely ordered defendants to be more responsive to the affidavits of Alside. It does not appear that the judge was in fact hostile to the invocation of the fifth amendment. In fact, the record does reveal that the judge issued an order limiting discovery on the basis of possible self-incrimination, a stance clearly inconsistent with an antagonistic attitude toward the defendant's claim. We fail to perceive how the judge's order to respond compelled an abandonment of fifth amendment rights.

Once it is recognized that Keno was not compelled to testify, it becomes clear that his decision to do so was a product of trial strategy. Any "waiver" of the fifth amendment must be voluntary, but invocation of the privilege does not release defendant from any choice concerning the use of his or her testimony. The fifth amendment preserves the right to choose, and the voluntariness of the choice is always affected in some way by the exigencies of a particular situation. The voluntariness inquiry necessarily incorporates an understanding that defendant cannot be free from conflicting concerns, and in any case, defendant must weigh the relative advantages of silence and explanation. In the present case, the state court did not so unduly burden the employment of silence as to make the decision to testify involuntary.[9]

■ B. The prosecution introduced evidence that Keno had acquired considerable assets on a limited income. Keno adduced evidence, based upon his own testimony, that much of his personal wealth had been accumulated through his skills as a real

---

9. Keno also asserts that the use of this testimony from the civil trial "forced" him to take the stand in the criminal trial to explain his prior statements. If, however, the testimony was not elicited unconstitutionally, then its use no more forced him to take the stand than does any strong prosecution case.

estate investor. Keno contends that submission of the prosecution's evidence of subsequent wealth [10] to the jury was error after his rebuttal. We can perceive no error in the trial judge's failure to instruct the jury to disregard the evidence. If there is a conflict of evidence concerning the source of defendant's wealth, the better rule is to leave the question of resolving such a conflict to the jury. *See United States v. Michaelson*, 453 F.2d 1248 (9 Cir. 1972); *Sidders v. United States*, 381 F.2d 513 (9 Cir. 1967). This is especially appropriate when the evidence rests in large part upon the credibility of a witness.

■ C. Keno contends that conduct on the part of the prosecutor in relation to a defense witness irreparably prejudiced his defense. He contends that he called Tom Shaw [11] as a witness in reliance upon a purported grant of immunity by the United States Attorney. When it appeared during Shaw's testimony that the grant of immunity was fallacious, Keno contends Shaw invoked his fifth amendment privilege, and Keno therefore lost irreplaceable testimony upon which he had constructed his defense. Keno also contends that when Shaw invoked the fifth amendment, the jury necessarily projected an "obvious inference of guilt" onto Keno because of the similarity of positions occupied by him and Shaw. We reject this argument in all its permutations.

First, Keno does not contend nor does the record show that the United States Attorney erroneously represented to him the status of Shaw's immunity. Absent some showing that Keno in fact had reasonable grounds to rely upon this putative immunity, we fail to see how any erroneous impression possibly given to Shaw could rebound to Keno's benefit.[12]

Second, an examination of the criminal trial record raises some question concerning the fact of Keno's reliance. During cross-examination of Shaw, Keno's attorney interrupted, and the following exchange ensued:

MR. GARRETT: Your Honor, before we persue [sic] this any further, I would like to find out if Mr. Shaw's aware of his Constitutional rights in this particular question.

I think she's about to ask him some things we may have to need a hearing outside the jury on.

THE COURT: Well, I don't know how his Constitutional rights are involved.

You mean—what Constitutional right did you have in mind?

MR. GARRETT: Well, sir, if she's about to ask him about his personal knowledge of this account and how it operated down there, and they're prosecuting Terry for it, I think it would be, what the State, or the Government would consider incriminating evidence against him, and I think he has a right to know about his rights in this case.

Record, Vol. III at 32. We believe that this discussion clearly indicates that even if the defense knew of Shaw's supposed immunity, they discounted it.

Third, we can perceive no prejudice arising out of the mid-trial discovery of the ineffectiveness of Shaw's protection. Despite Keno's present assertion of the crucial importance of Shaw's testimony, at trial,

---

10. *See note 7 supra.*

11. Shaw had worked in the Atlanta warehouse during the relevant time period. Keno contends that Shaw would have supported his version of the purpose behind Georgia Remodeling.

12. It is somewhat unclear whether even Shaw was misled by this supposed grant of immunity, despite his protestations. In fact, Shaw testified:

THE WITNESS: Okay, So at that point, Mr. Dutch [Shaw's attorney] came and says, "This is not a formal immunity, this is from Miss McKenzie and her superior and the Postal Inspector that's involved in the case." And he said, "It's pretty strong and if you don't lie, they're going to have a hard time taking you to Court. We can sit here and touch [sic] it out for immunity or go on that." He left the decision up to me.

I went and testified before the Grand Jury based on—because Mr. Dutch felt secure with the document, and I testified before the Grand Jury based on that fact. And that's where I sit in this matter.

Record, Vol. III at 41–42.

counsel described Shaw's testimony as cumulative. Record, Vol. III at 58. Also, Shaw did testify and his testimony was favorable to Keno's defense. Finally, even if we accept Keno's argument of prejudice arising out of imputation of an impermissible inference of guilt, Shaw did not invoke the fifth amendment during his testimony.

D. Finally, Keno complains of a number of instances of error on the part of the district court, which, in their totality, deprived him of a fair trial. We will deal with each separately.

■ (1) Keno contends that the trial judge took an improperly adversarial position when questioning his expert witness, Jolley. In examination of the judge's interrogation of Jolley, we cannot perceive that the trial judge so overstepped the requirement of impartiality that his actions reflected a bias to the jury.

In his questioning of Jolley, the judge was apparently attempting to clarify the points at which Jolley contradicted the prosecution's expert witness. His questioning might have disconcerted Jolley, and his line of questions was based in part upon his remembrance of the prosecution witness' testimony. The district court, however, instructed the jury to ignore any factual assertions made by him during the questioning, and his final charge instructed the jury that the fact of his questioning should not be considered in their deliberations. Also, his questioning was neither as lengthy nor as antagonistic as those instances that required reversal in *United States v. Hoker,* 483 F.2d 359 (5 Cir. 1973), and *United States v. Lanham,* 416 F.2d 1140 (5 Cir. 1969). Moreover, in our examination of the record as a whole, *see United States v. James,* 528 F.2d 999 (5 Cir. 1976), *cert. denied,* 429 U.S. 959, 97 S.Ct. 382, 50 L.Ed.2d 326 (1977), it does not appear that the district judge was either overzealous or that his impartial attitude is open to question. *See United States v. Siegel,* 587 F.2d 721 (5 Cir. 1979).

■ (2) Keno contends that the judge fell asleep during his counsel's opening argument, and that this gave rise to impermissible prejudice to his defense.[13] Keno does not assert that he was in fact deprived of a fundamental element of a criminal trial, *compare* appellant's contention in *United States v. Boswell,* 565 F.2d 1338 (5 Cir. 1978); instead, he argues that such an occurrence during the initial presentation of his defense amounted to judicial disparagement of counsel's argument, which affected the jury. Although a judge falling asleep is unfortunate, we believe that any possible prejudice was so attenuated as to be nonexistent. We find it difficult to believe that the jury would infer from this judicial somnolence any judgment concerning the validity of counsel's arguments. This disbelief is buttressed by the fact that the judge informed the jury, in explanation of frequent recesses and short sessions, that he was under doctor's orders to "either quit entirely or cut down on my hours." Record, Vol. II at 167. Under these circumstances, it is far more likely that the jury would consider the sleeping incident as a manifestation of his reduced health, and not any comment upon the defense.

■ (3) In ordering of closing arguments, the trial judge limited defense counsels to thirty minutes apiece. Keno complains that this limitation made it impossible for his counsel to adequately summarize his defense. It is clear that the ordering of argument rests within the sound discretion of the trial court. *See, e. g., United States v. Owens,* 453 F.2d 355 (5 Cir. 1971). We cannot perceive that that discretion was abused. Although the case was complex,

---

**13.** This occurrence does not appear on the record, and counsel has not acted under F.R.A.P. 10(e) for correction of this purported omission. This failure by counsel, however, would not necessarily foreclose subsequent proceedings in order to complete the record. *See* 9 J. Moore & B. Ward, Moore's Federal Practice ¶ 210.08[2] (2d ed. 1975). *Cf. United States v. Garner,* 581 F.2d 481 (5 Cir. 1978) (duty of district court to ensure that requirements of Court Reporters Act, 28 U.S.C. § 753, are complied with). Since we find that, even under the facts as asserted, there was no reversible error, we need not decide if a remand in this case would have been necessary to determine if the facts alleged actually occurred.

limiting argument to thirty minutes does not appear to be unreasonable. Also, counsel acquiesced in the limitation without objection, even after the judge had shown himself amenable to extending the time for argument. Record, Vol. III at 226–27.

■ (4) Keno also complains that the judge erred when he instructed the jury:

I instruct you, however, that the mere fact that Mr. Broussard has pled nolo contendere, which is—on which the Court has found him guilty, the mere fact that he entered such a plea in his case is to be taken by you as no evidence whatsoever as to the guilt or innocence of the other two Defendants on trial. The mere fact that one Defendant has seen fit to plead guilty or nolo contendere and had his case disposed of in that fashion is not any evidence whatsoever against the two Defendants on trial. And they are entitled to have their guilt or innocence determined entirely on the evidence presented in this trial. And you are to draw no inferences whatsoever as to their guilt or innocence merely because of some plea entered by a third Defendant.

Record, Vol. III at 240. Keno asserts that conflating a plea of nolo contendere by a codefendant with a finding of guilt gave rise to prejudice. Keno apparently argues that the statement "on which the Court has found him guilty" gave rise to an inference of guilt by association that was not dissipated by the court's direction to disregard the *plea* of nolo contendere.[14] The trial judge's comments, however, were in the context of explaining to the jury the nature of a plea of nolo contendere, and, the court previously had limited the equating of the plea and determination of guilt to the effects of such

a plea in the sentencing process. Record, Vol. III at 240. It is unreasonable to assume that the jury would have relied upon this comment in this context as evidence of the defendant's guilt in direct disregard of the clear statement of the judge that they were to entirely ignore the fact of Broussard's plea.

■ (5) Keno asserts that after three hours on the second day of deliberations, the jury informed the trial judge that it was deadlocked and requested a recess.[15] The trial judge denied this request. Five minutes later, the jury returned a verdict of guilty on all counts. Keno argues that the court's failure to grant a recess amounted to coercion. As a general rule, the length of time of jury deliberations is a matter of trial court discretion. *United States v. Caracci,* 446 F.2d 173 (5 Cir. 1973). Absent some other circumstances, mere length of time cannot constitute coercion. In the present case, Keno asserts that the rendering of a verdict within five minutes of a request for a recess compels a conclusion that the recalcitrant jurors were overcome because of the denial of a recess. The trial judge's refusal, however, could not reasonably be perceived as a threat of extended deliberations. The record does not reveal nor does defendant contend that the judge had kept the jury at its deliberations an unreasonable amount of time. In light of these circumstances, the decision by the judge to make the jury continue deliberations was not an abuse of discretion.

Finding this trial free of reversible error, we AFFIRM.

14. A cautionary instruction is generally sufficient to dispel any prejudice that arises from informing the jury of a codefendant's plea of guilty. *See United States v. King,* 505 F.2d 602 (5 Cir. 1974); *United States v. Davis,* 487 F.2d 112 (5 Cir. 1973), *cert. denied,* 415 U.S. 981, 94 S.Ct. 1573, 39 L.Ed.2d 878 (1974). Keno does not argue that the instructions in this case did not dispel the prejudice arising from the jury's knowledge of Broussard's plea of nolo contendere.

Counsel for Keno did not object to this wording in the instruction; counsel for White did. We believe objection by codefendant's counsel is sufficient to preserve any error. *See United States v. Lefkowitz,* 284 F.2d 310, 313 n.1 (2 Cir. 1960).

15. This exchange does not appear in the record. *See* note 12 *supra.*