**David BELLUM, Plaintiff,**

v.

**George VOSE, et al., Defendants.**

**Civ. A. No. 92–11084–JLT.**

United States District Court, D. Massachusetts.

March 22, 1994.

David Bellum, pro se.

Charles M. Wyzanski, Mass. Dept. of Corrections, Boston, MA, for defendants.

*MEMORANDUM*

TAURO, Chief Judge.

I.

*Background.*

Plaintiff David Bellum ("Bellum") is a prisoner incarcerated at the maximum security prison at Cedar Junction, Walpole, Massachusetts. In December 1989, when Bellum was confined at the Old Colony Correctional Center in Bridgewater, Massachusetts, Officer Harold Marrow allegedly observed Bellum and another inmate assault a third inmate, Glen Manaiza. Following that episode, Bellum was served with a disciplinary report and charged with "fighting with, assaulting, or threatening another person with any offense against his person or property."[1] The

---

1. *See* Def.'s Mem.Supp.Summ.J. at 2. The disciplinary board also charged Bellum with: disobeying the order of a staff member, conduct disrupting the security/orderly running of the institution, violating a law of Massachusetts or

matter was also referred to the Plymouth County District Attorney for criminal proceedings.

At his disciplinary hearing, Bellum pled "not guilty" and chose not to testify. Relying on the eyewitness testimony of Officer Marrow, the disciplinary board found Bellum guilty of all charged offenses and sanctioned him with thirty days isolation, reclassification to a higher security prison, and the loss of 200 days of good time. *See* Def.'s Mem. Supp.Summ.J.Ex. 2. Bellum's appeal was denied by the prison superintendent, and he was relocated to the Departmental Segregation Unit ("D.S.U.").

The District Attorney's office subsequently filed criminal charges against Bellum arising from his role in the same incident. Bellum was tried in Brockton District Court on charges of assault and battery and assault and battery with a dangerous weapon. Bellum again chose not to testify and was acquitted on both counts.

Bellum now claims that because he was acquitted of the criminal charges, the sanctions imposed on him by the disciplinary board violated his right to due process under the Fourteenth Amendment. Bellum seeks to have his 200 days of good time reinstated. He also seeks to have any reference to his D.S.U. confinement expunged from his record, alleging that such references negatively impact his parole hearings.

Presently before the court is defendant's motion for summary judgment.[2]

## II.

### *Analysis*

#### A. *Fourteenth Amendment Violations*

██ Bellum claims that by refusing to reinstate his good time credits following his criminal acquittal, the defendants violated his Fourteenth Amendment right to due process.

Defendants assert, however, that the criminal proceedings should not affect the earlier disciplinary proceedings or the administrative sanctions.

The Supreme Court has held that good time credits accumulated by state prisoners represent a liberty interest which cannot be forfeited for misconduct absent "the minimum requirements of procedural due process appropriate for the circumstances." *Wolff v. McDonnell,* 418 U.S. 539, 558, 94 S.Ct. 2963, 2976, 41 L.Ed.2d 935 (1974). Bellum appears to challenge the fundamental fairness of revoking his good time credits in the face of his eventual acquittal at trial, and he asserts that such action violates due process concerns embodied in the Fourteenth Amendment. Whether Bellum's criminal acquittal mandates reinstatement of his forfeited days of good time appears to present an issue of first impression in the First Circuit, but the Third Circuit addressed a similar issue in *Rusher v. Arnold,* 550 F.2d 896 (3d Cir.1977).[3]

In *Rusher,* the court considered whether good time credits forfeited as a result of disciplinary sanctions must be restored to a prisoner who is subsequently acquitted at trial of charges arising from the same incident. The court reasoned that "the inability of the Government to meet its burden of persuasion in criminal cases is no bar to other non-criminal sanctions based upon a less stringent burden." *Id.* 550 F.2d at 899. Furthermore, the court found that "acquittal is not conclusive of the factual dispute before the [disciplinary] Board." *Id.*

This court finds the reasoning in *Rusher* persuasive. Criminal trials and prison disciplinary proceedings possess different characteristics and objectives, and the result of one proceeding may not affect the disposition of the other. For example, in this case, as in *Rusher,* the two tribunals employed different standards of proof. The disciplinary board

the United States, and aiding another to commit these offenses.

**2.** While plaintiff has filed a document entitled "Plaintiff's motion in opposition to [defendant's] motion to dismiss, *and plaintiff's motion for summary judgment,*" (emphasis added) this document primarily appears to be an opposition to defendant's motion for summary judgment.

**3.** *Rusher* has been cited with approval by several federal courts, including the Tenth Circuit, and at least one state court. *See, e.g., Dye v. United States Parole Commission,* 558 F.2d 1376, 1378 (10th Cir.1977); *Frankenberry v. Williams,* 677 F.Supp. 793, 796 (M.D.Pa.1988); *Rucker v. Meachum,* 513 F.Supp. 32, 34 (D.Okla.1980); *Wilson v. Farrier,* 372 N.W.2d 499 (Iowa 1985).

found Bellum guilty by a "preponderance of the evidence,"[4] while his acquittal at trial was based on the more stringent standard of "beyond a reasonable doubt."[5] As *Rusher* makes clear, the fact that Bellum was found "not guilty" in a court of law does not mean that the proof of his alleged actions could not satisfy the lower standard required by the prison disciplinary board.

In addition, the language and meaning of the disciplinary charges filed against Bellum differ from the criminal charges. The District Attorney charged Bellum with assault and battery and assault and battery with a dangerous weapon. The disciplinary board, on the other hand, charged him not only with these offenses, but also with several others, including: fighting, disobeying a staff member, and disrupting the order/security of the prison. Acquittal in the criminal action, therefore, is not exculpatory as to any of the disciplinary charges.

Bellum does not address the court's reasoning in *Rusher*. Instead, he challenges the nature and sufficiency of the evidence presented at the disciplinary hearing and the credibility of Officer Morrow.[6]

But Massachusetts law provides for state court review of alleged procedural shortcomings in prison disciplinary hearings by a writ of certiorari pursuant to Mass.Gen.L., ch. 249, § 4. *Pidge v. Superintendent, Mass. Correctional Inst., Cedar Junction*, 32 Mass. App.Ct. 14, 584 N.E.2d 1145, 1148 (1992).

Certiorari actions "may be brought in the [S]upreme [J]udicial or superior court" and must be filed "within sixty days next of the proceeding complained of."[7] The correct forum for Bellum's challenge to the evidence is, therefore, state court.[8]

## B. Fifth Amendment Considerations

 When Bellum appealed his disciplinary sanctions to the Superintendent, he argued that he had been unable to defend himself adequately because of the pending criminal charges. Bellum asserted that resolution of the disciplinary action prior to the criminal case limited his defense options at the disciplinary proceeding, because anything he said in the disciplinary hearing could have been used against him in the criminal action.[9] In other words, to assert his Fifth Amendment rights effectively in the criminal proceeding, Bellum had to forgo testifying at the disciplinary hearing.

But when Bellum elected to remain silent during the disciplinary proceedings, he exposed himself to the possibility that the Board would draw adverse inferences from his decision not to testify. *See Baxter v. Palmigiano*, 425 U.S. 308, 316–17, 96 S.Ct. 1551, 1557, 47 L.Ed.2d 810 (1976), (holding that adverse inferences may be drawn from an inmate's silence at prison disciplinary proceedings). Bellum appears to claim that, in effect, he had to risk disciplinary sanctions in

---

**4.** *See* Def.'s Mem.Supp.Summ.J. at 5.

**5.** *Rusher,* 550 F.2d at 899 (citing *Mullaney v. Wilbur,* 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975) (noting that the "beyond a reasonable doubt" standard is used to impose criminal liability)).

**6.** Bellum alleges that Officer Morrow changed his story at trial and was subsequently dismissed for falsifying a report. He also claims that the victim of the attack, inmate Manaiza, signed an affidavit stating that Bellum did not assault him. This affidavit was allegedly presented to the Prison D.S.U.

**7.** Mass.Gen.L., ch. 249, § 4.

**8.** Assuming *arguendo* that this court should review Bellum's challenge to the evidence presented at the proceeding, the court notes that there appear to be several problems with his claim.

First, actions brought under Mass.Gen.L., ch. 249, § 4 must be filed within 60 days of the "proceeding complained of." But Bellum did not file this action until May 7, 1992, more than two years after his appeal, which was denied on January 24, 1990.

Furthermore, the Supreme Court has held that the decisions of prison disciplinary boards shall be upheld if there is "some evidence to support the findings made in the disciplinary hearing." *Superintendent v. Hill,* 472 U.S. 445, 457, 105 S.Ct. 2768, 2775, 86 L.Ed.2d 356 (1985) (finding guard's testimony that defendant fled an assault scene was sufficient for due process requirements). Here, where the disciplinary board had both a written report and eyewitness testimony that Bellum assaulted Manaiza, the record may contain "some evidence" to support the sanctions.

**9.** *See* Def.'s Mem.Supp.Summ.J., at 3, n. 6; *see also* Compl.Ex. C.

order to assert his Fifth Amendment right at trial. The court construes these allegations as a claim that his Fifth Amendment right against self-incrimination was impermissibly burdened.[10]

In *Hoover v. Knight,* 678 F.2d 578 (5th Cir.1982), the Fifth Circuit addressed the Fifth Amendment considerations that arise during parallel disciplinary and criminal proceedings. In *Hoover,* a police officer challenged her dismissal, asserting that she was unable to defend herself in a disciplinary hearing because of pending criminal charges arising from the same incident. *Id.* at 580. As in the instant case, the plaintiff in *Hoover* was acquitted of criminal charges and then sought rescission of disciplinary action taken at the earlier administrative proceeding. *Id.* The Fifth Circuit held that "[m]any cases have held that parallel criminal and civil trials or investigations do not raise questions of constitutional magnitude with respect to the privilege against self-incrimination." *Id.* at 581.[11] Consequently, the court refused to vacate the disciplinary action.

Similarly, in *United States v. White,* 589 F.2d 1283 (5th Cir.1979), a criminal defendant claimed that his decision to remain silent at an earlier civil proceeding to preserve his Fifth Amendment rights at trial prejudiced him in the civil action. The Fifth Circuit found that "[the defendant] was not forced to surrender his privilege against self-incrimination in order to prevent a judgment against him; although he may have been denied his most effective defense by remaining silent, there is no indication that invocation of the [F]ifth [A]mendment would have necessarily resulted in an adverse judgement." *White,* 589 F.2d at 1286.[12] The *White* Court held that refusing to stay defen-

dant's civil suit in the face of pending criminal charges did not constitute an impermissible burden on the Fifth Amendment. *Id.* at 1287.

Finally, the First Circuit appears to have used similar reasoning in earlier decisions. In *Arthurs v. Stern,* 560 F.2d 477 (1st Cir. 1977), the First Circuit refused to stay an administrative hearing of charges against a physician who allegedly wrote illegal prescriptions, even though the physician asserted that contemporaneous criminal charges forced him to choose between defending himself in the hearing and exercising his Fifth Amendment rights at trial. *Id.*

The court, therefore, determines that Bellum was not required to make an impermissible choice between defending himself in the prior disciplinary proceeding and preserving his Fifth Amendment privileges at trial. This court, therefore, finds no violation of Bellum's Fifth Amendment rights.

### IV.

### *Conclusion*

For the foregoing reasons, defendant's motion for summary judgment will be ALLOWED.

An order will issue.

---

**10.** While Bellum has not precisely articulated a Fifth Amendment challenge, "it is clear that as a *pro se* litigant [he is] entitled to have his pleadings liberally construed." *Gilday v. Boone,* 657 F.2d 1, 2 (1st Cir.1981).

**11.** The *Hoover* Court cited, *inter alia, S.E.C. v. Dresser Industries, Inc.,* 628 F.2d 1368 (D.C.Cir.) (en banc), *cert. denied* 449 U.S. 993, 101 S.Ct. 529, 66 L.Ed.2d 289 (1980); *United States v. White,* 589 F.2d 1283 (5th Cir.1979); *Diebold v. Civil Service Commission of St. Louis County,* 611 F.2d 697 (8th Cir.1979).

**12.** As in this case, administrative factfinders are generally permitted to draw adverse inferences from a defendant's failure to testify. "[T]he prevailing rule [is] that the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them: the Amendment 'does not preclude the inference where the privilege is claimed by a *party to a civil cause.'*" *Baxter* at 318 (*quoting* 8 J. Wigmore, Evidence 439 (McNaughton rev. 1961) (emphasis in original)).