### In re SHELL OIL REFINERY.

### Robert ADAMS, Sr.

v.

### SHELL OIL COMPANY.

**Civ. A. Nos. 88–1935, 88–2719.**

United States District Court,
E.D. Louisiana.

Feb. 1, 1993.

Thomas J. Wyllie, Adams and Reese, New Orleans, LA, for Shell Oil Company.

D. Douglas Howard, New Orleans, LA, for plaintiffs' Legal Committee.

Phillip A. Wittmann, Barry W. Ashe, Stone, Pigman, Walther, Wittman & Hutchinson, New Orleans, LA, for Kristopher Redmann.

Jackques Bezou, Jacqueline M. Daspit, Derussy, Bezou & Matthews, New Orleans, LA, for Jack Zewe.

MENTZ, District Judge.

## ORDER AND REASONS

The issue before the Court is whether the attorney-client privilege protects communications made by Jack Zewe to Kristopher Redmann regarding any matters related to Zewe's involvement in this suit. Jack Zewe is a former employee of defendant, Shell Oil Company, who, while he was employed by Shell, surreptitiously provided the PLC with certain documents belonging to Shell and other information related to the litigation. Kristopher Redmann is a partner in a New Orleans law firm.[1] He does not represent any parties in this lawsuit; however, he purportedly acted as Zewe's lawyer and rendered legal advice to him from approximately January, 1991 until October 23, 1992, in connection with Zewe's relationship with the PLC.

### Factual Background

The Plaintiffs' Legal Committee (PLC) represents the claimants in this class action against Shell Oil Company for compensatory and punitive damages arising from a catastrophic explosion at Shell's Norco, Louisiana refinery.[2] During the course of the proceedings, Shell learned that the PLC had possession of certain Shell business documents which Shell had not provided to the PLC during discovery. Shell conducted an internal investigation and learned that one of its employees who is a fact witness in the case, Jack Zewe, was the PLC's source for the documents.

1. Lugenbuhl, Burke, Wheaton, Peck & Rankin.

2. Brown & Root, U.S.A., Inc. is also a defendant in this case, but is not directly involved in the present dispute.

On October 1, 1992, Shell's attorneys took a 314–page, stenographically recorded, sworn statement from Zewe in which he discussed communications with Redmann and his dealings with the PLC. No other parties to the suit were present, and Zewe did not have legal counsel during the statement. At the conclusion of the statement, Zewe was terminated from his employment at Shell. Two days later, on October 3, Zewe gave a videotaped statement to the PLC in which he discussed similar matters. Again, no other parties to the suit were present, and Zewe did not have legal counsel present.

Thereafter, Shell filed a motion to disqualify the PLC for alleged ethical violations based on the PLC's contact with Zewe. Next, the PLC filed a motion to disqualify Shell's attorneys for alleged ethical violations based on discovery abuses. The motions to disqualify are set for an evidentiary hearing.

In the statement Zewe gave to Shell, he explained how his relationship with the PLC began. Zewe stated:

Contacted Attorney Kris Redmann. He's a long time personal friend of mine. I asked him if he knew anybody that was working with or involved with the litigation against Shell. If they would be interested in hiring me as a consultant was my question to Chris [sic]. He said he didn't know, but he would get back with me.

.     .     .     .     .

He called me back, I suppose, next day, and said that there was high interest in hiring me as a consultant and that he would set up a meeting. . . .

.     .     .     .     .

[A]bout a week later he set up a meeting between me—I went to his office, Kris Redmann's office, and he brought me over to Joe Bruno's[3] office on Baronne.

(Zewe Tr. Oct. 1, 1992 at 7–9).

The Court ordered Redmann's deposition to be taken prior to the evidentiary hearing. Redmann attempted to have the deposition quashed based on the attorney-client privilege. Two days before Redmann's deposition was scheduled to begin, Zewe's present attorney[4] sent a letter to Redmann's attorney[5] which simply states:

Jack Zewe fully invokes the attorney-client privilege that exists between him and Chris Redmond [sic]. Please instruct your client that any breach thereof will be dealt with severely.

Redmann argued that Zewe's invocation of the privilege would prohibit him from answering the majority of questions and therefore, the deposition would be futile.

Other than Zewe's conclusory assertion of the privilege, there was no evidence before the Court to show an attorney-client relationship between Zewe and Redmann. The two statements Zewe gave to Shell and the PLC tend to disprove an attorney-client relationship. Accordingly, the Court denied Redmann's motion to quash on the ground that there was no attorney-client relationship or privilege, and that if there were a privilege, Zewe had waived it by voluntarily giving two statements to third parties (Shell and the PLC). The Court ordered Redmann's deposition to be taken in Chambers.

In the beginning of Redmann's deposition, Zewe's attorney raised, for the first time, an argument that Zewe did not waive the privilege because the statement he gave to Shell was coerced, and the subsequent statement to the PLC was "tainted" by the coercion of the first statement. Notwithstanding the untimeliness of this argument, the Court permitted the parties to submit additional briefs, but ordered them to proceed with Redmann's deposition

---

3. Joseph Bruno is a member of the Plaintiffs' Legal Committee.

4. On November 19, 1992, Jacques Bezou enrolled as counsel for Zewe for the limited purpose of making special appearances in this litigation on behalf of Zewe.

5. On January 12, 1993, Phillip Wittmann enrolled as counsel for Redmann for the limited purpose of making special appearances in this litigation on behalf of Redmann.

so the Court could review the questions on which Zewe asserted the privilege.

Shell deposed Redmann over a two-day period during which Zewe made numerous objections on the ground of the attorney-client privilege, pursuant to which Redmann refused to answer the questions. Having reviewed Redmann's deposition, the legal memoranda, the record, and the applicable law, the Court adheres to its original finding that there is no attorney-client relationship or privilege between Jack Zewe and Kristopher Redmann regarding any matters related to Zewe's involvement with the PLC or any member thereof and this litigation,[6] and that even if there were a privilege, it has been waived.

## Analysis

■ The burden of substantiating a claim of privilege falls upon the party asserting the privilege. *Smith v. Kavanaugh, Pierson & Talley*, 513 So.2d 1138, 1143 (La.1987). The asserting party must adequately substantiate the claim of privilege; a party cannot rely on a blanket assertion of privilege. *Nutmeg Ins. Co. v. Atwell Vogel & Sterling*, 120 F.R.D. 504, 510 (W.D.La.1988).

■ The elements necessary to establish an attorney-client privilege are:

1) the asserted holder of the privilege is or sought to become a client; 2) the communication is made to an attorney or his subordinate, in his professional capacity; 3) the communication is made outside the presence of strangers; 4) for the purpose of obtaining an opinion on the law or legal services and 5) the privilege is not waived.

*New Orleans Saints v. Griesedieck*, 612 F.Supp. 59, 62 (E.D.La.1985), *aff'd*, 790 F.2d 1249 (5th Cir.1986).

■ Redmann testified in deposition[7] that he believed that Zewe was his client (Redmann Tr. at 233–34, 407), and he rendered legal advice regarding Zewe's relationship with the PLC and what Zewe wanted to do in that regard (Redmann Tr. at 135–36, 408). Zewe submitted an affidavit referring to "my attorney, Kris Redmann"[8] and the letter containing his conclusory invocation of the attorney-client privilege, quoted above. Zewe's affidavit contains no averment that he made confidential communications to Redmann regarding any matter related to this litigation for the purpose of obtaining legal advice or services.

In contrast, the substantial evidence is that Zewe approached Redmann "as a long time personal friend" to put him in contact with the PLC. (Zewe Tr. Oct. 1, 1992 at 7–9). Zewe stated that "I came to see him [Joseph Bruno], through a friend." (Zewe Tr. Oct. 3, 1992 at 106). Zewe also stated that a "third party, Chris Redmann [sic]," conveyed to him that the Judge had prohibited the PLC from further communication with Zewe. (*Id.* at 39).

Redmann did not fill out a client sheet, allocate any time to any files, or charge Zewe any fees related to this matter (Redmann Tr. at 51, 101, 407–08). Redmann's testimony that he gave Zewe legal advice about his relationship with the PLC is cast in doubt by his testimony that he accompanied Zewe to a meeting with John Cummings[9] and Joseph Bruno, which he believed was to discuss what services Zewe would perform for the PLC (Redmann Tr. at 336–37), but sat outside that meeting, because he was not concerned with what happened with their relationship (Redmann Tr. at 329–331, 346). In addition, Zewe did not ask Redmann to attend the videotaped statement he gave to the PLC on October

---

**6.** There may have been an attorney-client relationship between Zewe and Redmann regarding other matters unrelated to this litigation. The Court's ruling does not apply to those unrelated matters.

**7.** The parties entered a stipulated protective order on Redmann's deposition. In an effort to respect the stipulation, the Court has summarized Redmann's testimony, and to the extent that these summaries may transgress the stipu-

lation, the stipulated protective order is lifted for the limited purpose of rendering and publishing this opinion.

**8.** Zewe has submitted several affidavits. The one referred to here is dated January 18, 1993.

**9.** John Cummings is Lead Liaison Counsel for the Plaintiffs' Legal Committee.

3, 1992. (Redmann Tr. at 160, 427), and Redmann did not assist or advise Zewe in connection with his January, 1992, affidavit submitted by the PLC, even though these matters occurred during the time that Redmann and Zewe claim they had an attorney-client relationship (Redmann Tr. 150–53).

John M. Estes, Senior Security Representative for Shell Oil Company who was present during the October 1, 1992 statement Zewe gave to Shell, avers that prior to commencing the statement, he asked Zewe if he was represented by an attorney at present or at any time during the past two years. Zewe denied being represented by an attorney on that date, but stated that during the past two years, Redmann defended him on a collection matter involving Sherwin Williams.

Zewe has not adequately shown the existence of an attorney-client relationship with Redmann regarding any matter related to this litigation. Zewe did not engage Redmann for some activity peculiarly within the province of an attorney such as giving advice on legal questions, but approached him as a friend, contact, or agent to put Zewe in touch with the PLC. Any services Redmann performed for Zewe were not performed in a legal capacity. Further, Zewe has failed to show that his communications to Redmann were made with an expectation of confidentiality. *United States v. Davis,* 636 F.2d 1028 (5th Cir.), *cert. denied,* 454 U.S. 862, 102 S.Ct. 320, 70 L.Ed.2d 162 (1981) ("An attorney who acts as his client's business advisor, or his agent for receipt or disbursement of money or property to or from third parties is not acting in a legal capacity, and records of such transactions are not privileged"); *McDaniel v. Dept. of Safety and Permits,* 270 So.2d 290 (La.App. 4th Cir.1972) (no attorney-client relationship where attorney's services were used to set up a job interview); *McCormick on Evidence,* § 88 4th Ed. 322–24 (1992) ("[W]here one consults an attorney not as a lawyer but as a friend or as a business adviser ... or as an

agent, the consultation is not professional nor the statement privileged").

█ Even if there were substantial evidence to show an attorney-client privilege regarding communications between Redmann and Zewe, the Court finds that the privilege was waived when Zewe gave the October 1, 1992 statement to Shell and the October 3, 1992 statement to the PLC. Zewe's affidavit in which he states that he was coerced to give his October 1 statement to Shell is not credible in light of substantial evidence to the contrary. In the sworn statement to Shell, Zewe clearly testified that he was making the statement voluntarily, that he had not been promised anything, coerced or forced to give the statement, and that no one had suggested what answers he should give to Shell's questions. (Zewe Tr. Oct. 1, 1992, at 5–6). This sworn testimony is corroborated by John Estes' affidavit and by Zewe himself when he gave his statement to the PLC two days later:

> In the deposition Thursday [the October 1, 1992 statement to Shell], I was allowed to talk. I wasn't told to shut up. I wasn't coerced, I wasn't stopped. They didn't put their arms around me. I would say what I wanted. I was not threatened or anything. If you don't have a job, they can't threaten you anymore.

(Zewe Tr. Oct. 3, 1992 at 97).

█ Zewe's contends that his October 1 statement cannot constitute a waiver of privilege because Shell did not advise him of a right to counsel. His position is without merit because Shell's interrogation of Zewe was not a custodial interrogation by law enforcement officers or for a purpose of any criminal proceeding.[10] *U.S. v. White,* 589 F.2d 1283, 1285 (5th Cir.1979); *U.S. v. Vecchiarello,* 569 F.2d 656, 664 (D.C.Cir.1977).

Zewe gave a statement to the PLC two days after he was terminated from Shell and without any Shell representatives present. There is no indication of any forces

**10.** Shell advised Zewe that it did not intend to use the statement for any criminal prosecution against Zewe.

attendant to this second statement that would negate Zewe's apparently voluntary and deliberate disclosures.

■ Waiver also occurred by virtue of Redmann disclosing communications to a third party and member of the PLC, Joseph Bruno: he discussed with Bruno why Zewe was coming forward and what Zewe was offering to do for the PLC (Redmann Tr. at 180–84, 218–19, 222–23); he told Bruno what Zewe had experienced or had knowledge of (Redmann Tr. at 217); he discussed with Bruno Zewe's involvement in assisting Shell's defense (Redmann Tr. at 219–220); and he discussed with Bruno the activity performed by Zewe for the PLC (Redmann Tr. at 119–21, 345).

■ Zewe also waived any privilege by selectively disclosing allegedly privileged communications for unfair tactical advantage. In his October 30, 1992 affidavit, Zewe avers that "I had absolutely nothing to do with Shell's trial strategy" and that when he gave his deposition in the class litigation as a fact witness and employee of Shell, "Shell and its lawyers, specifically, James E. Blasek, Andrew C. Clausen and Margaret "Peggy" Joffe, were guilty of professional misconduct in that they counselled me to not tell the truth in my deposition; and further they threatened me with the loss of my job if I did tell the truth." Again, in his January 18, 1993 affidavit, Zewe avers that prior to his deposition as a fact witness, the lawyers for Shell "prepared me for three days and coached me on how to avoid the truth." Zewe has stated that the alleged instructions to evade the truth and threats motivated him to offer his services to the PLC. (Zewe Tr. Oct. 1, 1992 at 9–10). Yet, during Redmann's deposition, Zewe invoked the privilege to prevent Redmann from revealing Zewe's communications to him about his reasons for coming forward and his participation with Shell's counsel in their defense of the class action. (Redmann Tr. at 105, 122). Lawyers and clients may not abuse the privilege by selectively disclosing privileged communications for their own benefit and invoke the privilege as to other related communications to the detriment of the other litigant. *See Smith v. Kavanaugh, Pierson & Talley,* 513 So.2d 1138 (La.1987). "This is so because the privilege of secret communications is intended only as an incidental means of defense, and not as an independent means of attack, and to use it in the latter category is to abandon it in the former." *U.S. v. Woodall,* 438 F.2d 1317, 1324 (5th Cir.1970), *cert. denied,* 403 U.S. 933, 91 S.Ct. 2262, 29 L.Ed.2d 712 (1972) (quoting 8 Wigmore, Evidence § 2327 at 638 (McNaughton Rev.1961)).

Accordingly,

IT IS ORDERED that the deposition of Kristopher Redmann shall resume in Chambers on a mutually convenient date within the next two weeks. The attorney-client privilege shall not be a basis for any objection to questions about communications between Zewe and Redmann related in any manner to this litigation.