**EXXON CORPORATION**

v.

**ST. PAUL FIRE & MARINE INSURANCE.**

**Civ. A. No. 94–2111.**

United States District Court,
E.D. Louisiana.

Oct. 31, 1995.

Louise Vanmeter White, Lourdes Estevez Martinez, New Orleans, LA, for plaintiff.

John Emerson Galloway, Galloway, Johnson, Tomkins & Burr, New Orleans, LA, Peter Henry Wickersham, Nesser, King & LeBlanc, New Orleans, LA, for defendant.

**1008**

Maria Nan Alessandra, Phelps Dunbar, New Orleans, LA, for movant.

## ORDER AND REASONS

JONES, District Judge.

Pending before the Court is "Exxon Corporation's Motion to Review Order of Magistrate Judge," which was submitted on a previous date without oral argument. Having reviewed the memoranda of the parties, the record and the applicable law, the Court DENIES the motion of Exxon Corporation.

### Background

Exxon Corporation (hereinafter "Exxon") filed suit seeking declaratory judgment that a "Settlement Agreement" allegedly entered into with St. Paul Fire & Marine Insurance Company (hereinafter "St. Paul") does not contain a limit of $500,000 on sums owed by St. Paul. (R.Doc. 1.) Exxon further sought declaratory judgment that St. Paul breached the Settlement Agreement. *Id.*

In an "Order and Reasons" dated June 23, 1995 (R.Doc. 65), the Court granted St. Paul's motion for summary judgment on this issue but denied Exxon's cross-motion for summary judgment. However, prior to the entry of this ruling, Exxon supplemented its complaint, seeking declaratory judgment as to the extent of coverage under the insurance policy at issue and adding a claim of breach of good faith and fair dealing against St. Paul allegedly arising out of St. Paul's treatment of Exxon as to certain claims made against Exxon under the policy at issue. (R.Doc. 39.)

Exxon then issued a subpoena request to Alexander & Alexander, Inc. (hereinafter "A & A"), which was the insurance broker for the maritime company MARMAC. A & A had procured from St. Paul the insurance policy under which Exxon maintains that it is an additional insured. St. Paul moved to quash the subpoena, and Exxon moved to compel the production of documents under the subpoena. (R.Docs. 40 and 50, respectively.) The Magistrate Judge granted Exxon's motion to compel and denied St. Paul's motion to quash, subject to the following exception: "No document or other matter to

which defendant [St. Paul] asserts a privilege is subject to this order." (R.Doc. 71.)

A & A responded to the subpoena but produced 38 documents which St. Paul considered privileged. The Magistrate Judge then granted St. Paul's "Motion to Correct the Return of Alexander & Alexander, Inc., on Subpoena," finding that A & A "was privy to these confidential communications because of its status as MARMAC's agent." (R.Doc. 97, p. 2.) The Magistrate Judge reasoned:

> Phelps, Dunbar [a law firm] was representing both MARMAC and St. Paul at the time in connection with the underlying personal injury litigation and the policy coverage issues arising therefrom. Therefore, the communications remain privileged. La.Code Evid. art. 506(B) (West.Supp. 1995).

*Id.*

Exxon brings the instant motion arguing that A & A was not a "client" or "representative" of MARMAC, as those terms are defined in the La.Code of Evidence, such that the documents that may have been sent to A & A are not privileged. Further, Exxon questions St. Paul's standing to bring the motion to correct the subpoena and also contends that the documents sought are relevant to the issue of bad faith.

In opposition, St. Paul argues that it has standing to enforce the attorney-client privilege. St. Paul further posits that the documents are clearly privileged when analyzed under the La.Code of Evidence and in light of the testimony of various persons deposed in this matter and the affidavit of A & A's claims manager.

### Law and Application

■ Because Exxon's motion involves a nondispositive pretrial matter, the Court will modify or set aside the Magistrate Judge's ruling only if it is found to be clearly erroneous or contrary to law. Fed.R.Civ.P. 72(a). *See* 28 U.S.C. § 636(b)(1)(A).

■ Rule 501 of the Federal Rules of Evidence provides, in pertinent part, that "in civil actions . . . with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a . . . person . . . shall be determined in

accordance with State law." Because this lawsuit is based upon diversity jurisdiction,[1] the claim of attorney-client privilege is governed by Louisiana law under Rule 501. *Cf. United States v. Moore,* 970 F.2d 48, 49–50 (5th Cir.1992) (because case based on federal law, not Louisiana law, federal law supplies rule as to doctor-patient privilege, not Louisiana law). "The burden of substantiating a claim of privilege falls upon the party asserting the privilege." *In re: Shell Oil Refinery,* 812 F.Supp. 658, 661 (E.D.La.1993), *citing Smith v. Kavanaugh, Pierson & Talley,* 513 So.2d 1138, 1143 (La.1987).

The "Lawyer-client privilege" in Louisiana is set forth in the state's Code of Evidence, Art. 506. This codal article defines client, in pertinent part, as "a person ... to whom professional legal services are rendered by a lawyer...." LSA–C.E. Art. 506.A.(1). The article also defines "representative of a the client" as "[a] person having authority to obtain professional legal services, or to act on advice so obtained, on behalf of the client" or as "[a]ny other person who makes or receives a confidential communication for the purpose of effectuating legal representation for the client, while acting in the scope of employment for the client." LSA–C.E. Art. 506.-A.(2). As to the "general rule of privilege," the article provides, in pertinent part:

A client has a privilege to refuse to disclose, *and to prevent another person from disclosing,* a confidential communication, whether oral, written or otherwise, made for the purpose of facilitating the rendition of professional legal services to the client, as well as the perceptions, observations, and the like, of the mental, emotional, or physical condition of the client in connection with such a communication, when the communication is:

(1) Between the client or a representative of the client and the client's lawyer or representative of the lawyer;

\*　　\*　　\*　　\*　　\*　　\*

(4) Between representatives of the client or between a client and a representative of the client....

LSA–C.E. Art. 506.B (emphasis added). The privilege may be claimed by the "client, the client's agent or legal representative" or by the lawyer or lawyer's representative. LSA–C.E. Art. 506.D.

■ The first issue is whether the documents are privileged.[2] Exxon's argument is that the documents at issue [3] clearly indicate that they were not considered privileged or at the very least that the attorney-client privilege was waived when the communications were disclosed to A & A. However, the Court's *in camera* review of the documents clearly indicates that A & A's involvement was more than mere role-playing as an insurance broker, for the documents show that A & A was involved in the defense of the underlying cases that form the crux of the bad-faith claim remaining in this case. Additionally, the Executive Vice–President of MARMAC testified at his deposition that he was kept apprised of the developments in the underlying lawsuits by A & A, Neare, Gibbs and Company [4] and/or by his attorney involved in the cases.[5] The claims manager for St. Paul also testified in her deposition that communications either were sent directly to MARMAC or through A & A.[6] The documents themselves support this deposition testimony. Finally, an unrebutted affidavit from A & A's claims manager indicates that A & A received the communications at issue "in its capacity as an insurance broker and, as insurance broker, it is, at least in part, a

---

1. Original complaint, Paragraph 5, R.Doc. 1.

2. The Court addresses this issue first, rather than the standing issue, because if the documents are not privileged, standing is irrelevant.

3. Exxon filed these documents into the record under seal. (R.Doc. 99.)

4. Neare, Gibbs and Company was purchased by St. Paul, as explained by Exxon in its supplemental memorandum. (R.Doc. 105, p. 1, n. 1.)

5. Deposition of John Graham, pp. 14 and 21, attached as Exh. A to St. Paul's memorandum in opposition. (R.Doc. 103.)

6. Deposition of Deborah Sproehnle, p. 80, attached as Exh. B. to St. Paul's memorandum in opposition. (R.Doc. 103.)

conduit between the lawyer, the insured and the insurer."[7]

Exxon relies on the deposition testimony of the supervising lawyer involved in the underlying suits for its contention that A & A was neither a client nor "a representative of" MARMAC under the Louisiana Code of Evidence. However, the Court finds that this testimony actually favors St. Paul's argument, for the lawyer testified that it was "the policy" for A & A to be on the distribution list for this case.[8]

Therefore, based upon a review of the documents at issue and the law, the Court agrees with the Magistrate Judge that the documents at issue fall within the scope of "lawyer-client privilege" under Louisiana law. It is clear that A & A was MARMAC's representative under LSA–C.E. Art. 506.-A.(2) as an entity that had authority to act on legal advice obtained on behalf of a client and as an entity which received "confidential communication[s] for the purpose of effectuating legal representation for the client," while acting in the scope of employment for the client as MARMAC's agent.

In addition to its general argument that the attorney-client privilege does not apply, Exxon argues that certain documents clearly do not fall under the privilege. For example, Exxon contends that Document 33 only consists of notes from a telephone conference and cannot constitute privileged matter. However, the Court's review of the document shows that the notes include thoughts as to legal strategy. Similarly, Document 34, which Exxon contends contains no privileged information, also consists of notes as to legal strategy.

█ Exxon also argues that Document 32 is not privileged because such a privilege was waived when it was sent to excess insurers, as evidenced by documents 40 and 41.[9] St. Paul counters that there was no waiver because the excess insurers are within the "client group of MARMAC/St. Paul."[10] Because of the nature of the relationship between an insured and an insurer, including excess insurers, the Court refuses to hold that A & A's communication of a clearly privileged document to an excess insurer on behalf of the insured constitutes a waiver of the attorney-client privilege. Excess insurers are not disinterested third parties but entities who have a contractual relationship with the insured and whose interests—in most cases—are the same. Thus, forwarding of attorney letters such as Document 32 to excess insurers does not waive the attorney-client privilege. Moreover, Exxon cites no law in support of its argument, and the Court knows of none.

█ Exxon also argues, again without citation to any law, that St. Paul does not have standing to assert the attorney-client privilege. As noted, LSA–C.E. Art. 506.D. provides that the "client, the client's agent or legal representative" may assert the privilege. The Magistrate Judge found that St. Paul was seeking not only to enforce its own privilege but also that of MARMAC. The record supports this finding, as evidenced by the documents at issue in this motion and the evidence as to the drafting of the settlement documents at issue in the previous "Order and Reasons" granting partial summary judgment in St. Paul's favor. (R.Doc. 65, pp. 5 and 11, n. 9.) For instance, in its memorandum in support of its motion for summary judgment, St. Paul contended that a lawyer from the firm of Phelps, Dunbar represented St. Paul in settlement negotiations with Exxon. (R.Doc. 32, unnumbered pages 2–3.) Thus, the Court finds that the Magistrate Judge's ruling that St. Paul was representing both MARMAC and St. Paul is not clearly erroneous, and the Magistrate Judge's finding that St. Paul could assert the privilege on its own behalf and on MARMAC's behalf is legally correct under LSA–C.E. Art. 506.D.

---

7. Affidavit of Darlene Dullary, attached as Exh. D to St. Paul's memorandum in opposition. (R.Doc. 103.)

8. Deposition of James B. Kemp Jr., p. 9, attached as Exh. C to St. Paul's memorandum in opposition. (R.Doc. 103.)

9. Documents 40 and 41 are attached to Exxon's supplemental memorandum in support (R.Doc. 105) and are not at issue in this motion.

10. St. Paul's memorandum in opposition, p. 5. (R.Doc. 103.)

Finally, Exxon urges this Court to follow *Lehmann v. American Southern Home Insurance Company,* 615 So.2d 923, 926 (La. App. 1st Cir.1993), a case involving a bad-faith claim by an injured party against an insurer for failure to settle. Exxon asks the Court to recognize, as the *Lehmann* court did, the prejudice that Exxon may suffer if it is not allowed to use the documents that A & A turned over in response to Exxon's subpoena request in support of its bad-faith claim. However, Exxon fails to note the holding in *Lehmann, i.e.,* that the trial court appropriately ordered production of the claims file at issue for *in camera* review to determine if any documents therein were privileged before they were turned over in discovery. *Id.* The appellate court did not order that the claims file be turned in the face of a claim of privilege. The functional equivalent of *Lehmann* has occurred here. Both the Magistrate Judge and this Court have examined the documents at issue and have determined that, notwithstanding Exxon's claim that the documents support its bad-faith claim against St. Paul, St. Paul has carried the burden of showing that the documents at issue are subject to the attorney-client privilege.

### Conclusion

The Court holds that the Magistrate Judge's ruling as to the standing of St. Paul to assert attorney-client privilege and as to the privileged nature of the documents at issue is neither clearly erroneous nor contrary to law. Fed.R.Civ.P. 72(a).

Accordingly,

IT IS ORDERED that "Exxon Corporation's Motion to Review Order of Magistrate Judge" is DENIED.