Joseph Peter
**FRANKENBERRY, Plaintiff,**

v.

**John E. WILLIAMS, Chief Correctional Supervisor; R. Wagner, Chief of Case Management; and R. Hinderliter, Duty Officer, Defendants.**

**Civ. A. No. 86–1241.**

United States District Court,
M.D. Pennsylvania.

Jan. 26, 1988.

Joseph Peter Frankenberry, pro se.

Barbara L. Kosik, Asst. U.S. Atty., Scranton, Pa., for defendants.

## MEMORANDUM

RAMBO, District Judge.

Before the court is defendants' motion to dismiss or, in the alternative, for summary judgment. The motion has been briefed and is ripe for disposition.

*Background*

The following facts are not in dispute.[1] Plaintiff, an inmate at the Lewisburg Federal Penitentiary at the time he initiated this action, was required to submit a urine sample to prison officials on April 4, 1986 in accordance with that institution's program of testing for illegal drug use through the means of urine surveillance. Plaintiff's urine sample was tested by PharmChem Laboratories ("PharmChem") which subsequently reported to Lewisburg officials that plaintiff's urine sample contained traces of tetrahydrocannabinol ("THC"), an ingredient of marijuana. Upon receiving the PharmChem report, a Lewisburg official filed an incident report charging plaintiff with the "possession or use of any marijuana or drugs not authorized by the Medical Department." Defendants' Exhibit 1 at ¶ 8.

On May 15, 1986 plaintiff was summoned before the Unit Discipline Committee for an initial hearing. The Unit Discipline Committee referred the matter to the Institution Discipline Committee ("IDC"), which initially scheduled a hearing for May 22, 1986. The hearing was postponed once for thirty days and then a second time, upon plaintiff's request, so that plaintiff would have an opportunity to gather certain evidence. On July 21, 1986 the IDC hearing was conducted, and the IDC found that plaintiff had committed the act with which he was charged in the May 13, 1986 incident report. The Committee issued a written statement of its finding and summarized therein the evidence on which it had relied. As a result of its determination of guilt, the IDC sanctioned plaintiff by taking away two hundred fifty days of "statutory good time" and by committing plaintiff to thirty days of disciplinary segregation. The thirty days of disciplinary segregation were suspended for "six months clear conduct." Defendants' Exhibit 4.

At the IDC hearing, plaintiff claimed he had not used marijuana but that he had taken Tylenol with codeine and was given a local anesthetic for a tooth extraction on April 3, 1986, the day before he submitted his urine sample to prison officials. This claim was substantiated by a note from the prison hospital administrator, which note was submitted to the IDC. It was plaintiff's defense before the IDC, and it is his argument before this court, that the Tylenol with codeine and the anesthetic could

---

1. The recounting of undisputed facts and, ultimately, the disposition of defendants' motion would have been facilitated had defendants annexed to their motion a statement of material facts as required by Local Rule 401.4. Nonetheless, the facts summarized in this memorandum have been gleaned from the complaint, affidavits, admissions, and briefs which are before the court.

have produced a "false positive" result in the test performed by PharmChem to determine whether THC was present in plaintiff's urine. To support his defense, plaintiff submitted several documents to the IDC. These documents included plaintiff's own writings concerning the theory that certain drugs can produce false positive results for marijuana, a copy of plaintiff's request to PharmChem for information regarding the testing of his urine sample, a page from the Bureau of Prisons' program statement on urine surveillance, and a portion of an article on false-positive results that appeared in a 1983 "Drug Law Report" published by the National Organization for the Reform of Marijuana Laws. The IDC disregarded plaintiff's evidence and on the basis of the PharmChem report found plaintiff guilty.

On September 5, 1986 plaintiff initiated this action against John Williams, Richard Wagner, and Ronald Hinderliter, the members of the IDC which sanctioned plaintiff. Plaintiff's complaint consists essentially of the following claims: that defendants violated plaintiff's procedural due process rights by denying plaintiff or his representative a copy of an investigative report which pertained to the incident report filed against plaintiff, that defendants violated plaintiff's procedural due process rights by refusing to consider the evidence plaintiff presented at the IDC hearing, and that defendants violated plaintiff's procedural due process rights by reaching a decision contrary to the greater weight of the evidence.[2] Defendants have moved the court to dismiss the complaint or, in the alternative, to enter summary judgment in their favor.

In support of their motion defendants have submitted unsworn declarations and other documents which present to the court matters outside the pleading. Because the court will consider these matters in disposing of defendants' motion, the motion must be treated as one for summary judgment. Fed.R.Civ.P. 12(b). The entry of summary judgment is appropriate only if the pleadings, admissions, and unsworn declarations[3] show that there is no genuine issue as to any material fact and that defendants are entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Because defendants supported their motion with declarations and exhibits to the declarations, plaintiff was obligated to support his response with similar materials and to show that there is a genuine issue for trial. Fed.R.Civ.P. 56(e). A "genuine issue" exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, ——, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A material fact is one which may affect the outcome of the suit under governing law. *Id.*

In light of these standards the issues which the court must consider in disposing of defendants' motion are as follows: whether there is a genuine issue of material fact with respect to the procedure which led to the imposition of sanctions on plaintiff, and, if not, whether defendants are entitled to judgment as a matter of law.

*Discussion*

The fifth amendment of the United States Constitution provides, in part, that no person shall "be deprived of life, liberty, or property, without due process of law...." The Supreme Court has held that application of the identical provision of the fourteenth amendment requires a two-part analysis. "We must first ask whether the asserted individual interests are encompassed within the Fourteenth Amendment's protection of 'life, liberty or property'; if

---

**2.** Plaintiff also claims that each defendant failed to comply with regulations of conduct for federal employees which the President of the United States promulgated pursuant to 5 U.S.C. § 7301. These claims add nothing to plaintiff's allegations that defendants deprived plaintiff of his procedural due process rights. There is no indication that a federal employee's violation of the President's rules of conduct is actionable in the type of suit which is before the court. There-

fore, the claims of plaintiff based on 5 U.S.C. § 7301 form no basis upon which relief can be granted.

**3.** Unsworn declarations may be submitted in support of a motion for summary judgment in lieu of the affidavits contemplated by Federal Rule of Civil Procedure 56. 28 U.S.C. § 1746.

protected interests are implicated, we then must decide what procedures constitute 'due process of law.'" *Ingraham v. Wright,* 430 U.S. 651, 672, 97 S.Ct. 1401, 1413, 51 L.Ed.2d 711 (1977). In the context of the *Ingraham* analysis the court will resolve the issues presented by defendants' motion.

## A. *Protected Interests*

■ "To qualify as a constitutionally protected liberty interest, the prisoner's interest must be assured by statute, judicial decree, or regulation." *Becker v. Smith,* 554 F.Supp. 767, 769 (M.D.Pa. 1982), *citing Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). In the case at bar, it is clear that plaintiff's interest in remaining in the general population of the penitentiary is assured by a Bureau of Prisons' regulation. Strict requirements must be met to justify placing an inmate in disciplinary segregation. 28 C.F.R. § 541.20(a). Therefore, plaintiff's interest in not being committed to disciplinary segregation is a protected liberty interest. Defendants do not dispute this, and this conclusion is in accord with the holding regarding state prisoners in *Hewitt v. Helms,* 459 U.S. 460, 472, 103 S.Ct. 864, 871, 74 L.Ed.2d 675 (1983).

Plaintiff's interest in accumulating credits for "good time" is assured by statute, 18 U.S.C. § 4161, and is therefore also a protected liberty interest. Again, defendants do not dispute this, and this conclusion is in accord with the Supreme Court's decision in *Wolff v. McDonnell,* 418 U.S. 539, 557, 94 S.Ct. 2963, 2975, 41 L.Ed.2d 935 (1974). *See also Jackson v. Carlson,* 707 F.2d 943, 947 (7th Cir.1983), *cert. denied,* 464 U.S. 861, 104 S.Ct. 189, 78 L.Ed.2d 167 (1983). Thus, the first part of the *Ingraham* analysis is satisfied.

## B. *Due Process*

In *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) the Supreme Court determined what process was due to inmates of Nebraska prisons in the context of prison disciplinary proceedings. To satisfy the minimum requirements of procedural due process, prisons are required to provide written notice of the violation with which the prisoner is charged at least twenty-four hours in advance of the prisoner's appearance before the disciplinary committee. *Id.* at 563, 564, 94 S.Ct. at 2979. "Part of the function of notice is to give the charged party a chance to marshal the facts in his defense and to clarify what the charges are, in fact." *Id.* at 564, 94 S.Ct. at 2978. A second requirement of procedural due process is that the disciplinary committee must prepare a written statement as to the evidence on which it relies and the reasons for the disciplinary action it has taken. *Id.* Thirdly, the Court held that "the inmate facing disciplinary proceedings should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." *Id.* at 566, 94 S.Ct. at 2979. Finally, the Court ruled that when the inmate facing disciplinary proceedings is illiterate or the issue is so complex that the inmate is not likely to be able to defend himself adequately, the inmate should be free to seek the aid of a fellow inmate or to have the assistance of a prison staff member. *Id.* at 570, 94 S.Ct. at 2982.

The *Wolff* requirements for procedural due process have been applied to federal prisons by the Third Circuit Court of Appeals. *See, e.g., Rusher v. Arnold,* 550 F.2d 896, 898 (3d Cir.1977) and *Rhodes v. Robinson,* 612 F.2d 766, 774 (3d Cir.1979). The *Wolff* requirements have also been substantially adopted by the federal Bureau of Prisons in its promulgation of regulations governing hearings before the IDC. The twenty-four hour notice requirement is guaranteed at 28 C.F.R. § 541.17(a).[4] The opportunity of an inmate to present evidence and to call witnesses on his behalf is assured, with limitations, by § 541.17(c).

---

**4.** Hereinafter, all references to regulations will be to those contained in Title 28 of the Code of Federal Regulations.

The requirement of a written statement outlining the reasons and evidence on which the IDC bases its action is found at § 541.17(g). The right of an inmate to be represented before the IDC by an institution staff member is guaranteed by § 541.17(b).

In addition to the *Wolff* requirements for procedural due process, the Bureau of Prisons' regulations in effect at the time plaintiff was sanctioned by the IDC provided a fairly stringent standard of evidence to which the IDC was held in reaching its decision.[5] Pursuant to the appropriate regulations, the IDC was required to "consider all evidence presented at the hearing and ... make a decision in accordance with the greater weight of the evidence and one which is supported by *substantial evidence* manifested in the record of the proceedings." § 541.17(f) (emphasis supplied). In *Henderson v. Carlson*, 812 F.2d 874 (3d Cir.1987), the Third Circuit Court of Appeals held that the "substantial evidence" standard constraining the IDC also provides the standard by which courts are required to review actions taken by the IDC. *Id.* at 879.

The *Wolff* requirements, as they are adopted in the regulations of the Bureau of Prisons, and the substantial evidence standard mandated by the Bureau of Prisons' regulation constitute the "governing law" which respect to the procedural due process to which plaintiff in the case at bar was entitled. It is against this background that the court must decide whether there is a genuine issue as to any material fact and, if not, whether defendants are entitled to judgment as a matter of law.

1. *Notice*

 The declaration of defendant John Williams indicates that plaintiff's IDC hearing was initially scheduled for May 22, 1986. Defendant Wagner's declaration states that the hearing was once postponed for thirty days, and the fact that the hearing was not held until July 21, 1987 shows that a second postponement must have occurred. The two months between the date plaintiff's hearing was originally scheduled and the date on which the hearing actually took place more than satisfies the twenty-four hour notice requirement of *Wolff* and § 541.17(a).

Plaintiff argues that by denying a further postponement of the hearing until plaintiff received a response from Pharm-Chem to inquiries he had made, defendants denied him due process. According to plaintiff, defendants also should have postponed his hearing until his request for the investigative report pertinent to the disciplinary proceedings was finally acted upon by a Regional Office of the Bureau of Prisons. Both the anticipated response from PharmChem and the investigative report were items of evidence plaintiff apparently felt were necessary to his defense before the IDC. Defendants do not dispute that plaintiff's IDC hearing proceeded before plaintiff received a response from PharmChem or before his request for the investigative report was resolved.

Although one of the reasons for the advance notice requirement is, according to *Wolff*, that the inmate involved be given an opportunity to marshal facts in his defense, language in *Wolff* and the brevity of the notice requirement make it clear that an inmate is not necessarily entitled to an opportunity for exhaustive discovery before his IDC hearing. As stated in *Wolff*,

> there would be great unwisdom in encasing the disciplinary procedures in an inflexible constitutional straitjacket that would necessarily call for adversary proceedings typical of the criminal trial, very likely raise the level of confrontation between staff and inmate, and make more difficult the utilization of the disci-

---

**5.** Effective July 6, 1987, the Bureau of Prisons' regulations hold an IDC to a less exacting standard of evidence than was applicable to the IDC decision under review in the case at bar. Now, the IDC "shall make a decision based on *at least some facts,* and if there is conflicting evidence, it must be based on the greater weight of the evidence." 28 C.F.R. § 541.17(f) (emphasis supplied). The new regulation is in line with the Supreme Court's rule with respect to state prison disciplinary proceedings, as found in *Superintendent, Massachusetts Correctional Institution at Walpole v. Hill,* 472 U.S. 445, 455, 456, 105 S.Ct. 2768, 2774, 86 L.Ed.2d 356 (1985).

plinary process as a tool to advance the rehabilitative goals of the institution. *Wolff,* 418 U.S. at 563, 94 S.Ct. at 2978. The twenty-four hour advance notice requirement obviously entitles an inmate to a minimum amount of time to prepare his defense, and the undisputed facts in the instant action show that plaintiff had more than his rightful amount of time. For the court to hold that defendants should have further postponed plaintiff's hearing would be to equate the IDC hearing with the adversary proceedings of a criminal trial. Doing so would thereby force delays in the prison disciplinary process which would undoubtedly frustrate the Bureau of Prisons' goal "that inmates may live in a safe and orderly environment...." § 541.17(a). The court concludes that defendants met the notice requirement of procedural due process.

### 2. *Representation by Staff Member*

■ It is undisputed that plaintiff's request for representation by a prison staff representative was granted and that Jerry Reynolds, the arts and crafts supervisor at Lewisburg, represented plaintiff at the IDC hearing. According to Reynolds' own unsworn declaration, Reynolds made no specific requests or inquiries of the IDC as plaintiff had not asked him to do so. The written statement prepared by the IDC after the hearing indicates that at the hearing Reynolds made some statements concerning plaintiff's opinion on drug testing and that Reynolds felt that plaintiff had been afforded all his rights throughout the proceedings. The court concludes on the basis of these facts that the representation requirement of § 541.17(b) was satisfied.

### 3. *Opportunity to Call Witnesses and Present Evidence*

Plaintiff does not claim that he was denied the opportunity to call witnesses, and an exhibit to the declaration of defendant Williams clearly shows that plaintiff chose to forego that opportunity. *See* Declaration of Williams, Attachment 3. Plaintiff does, however, argue that his opportunity to present evidence was denied by defendants. Specifically, plaintiff complains that defendants did not provide plaintiff or his representative with a copy of the investigative report relating to the subject of the IDC hearing and that defendants did not accept the documentary evidence which he attempted to present in his defense.

■ With respect to the investigative report, the declaration of defendant Williams states that Williams has no recollection of plaintiff or plaintiff's staff representative ever requesting a copy of the investigative report. Had the staff representative asked for the report, Williams declares, the IDC would have supplied it to him. The declaration of defendant Wagner is even stronger, stating definitively that neither plaintiff nor plaintiff's staff representative asked at the hearing to see the investigative report. Wagner also states that plaintiff's staff representative would have received a copy of the investigative report had he asked for it. Reynolds' own declaration shows that he did not request a copy of the investigative report.

These declarations are not contradicted by plaintiff. Plaintiff conjectures that Reynolds was coerced into signing his unsworn declaration but presents no evidence to that effect. A document[6] submitted as an exhibit to plaintiff's complaint supports the undisputed fact that Reynolds did not ask for a copy of the investigative report and explains his failure to do so as being the result of his inexperience in appearing before the IDC. Regardless of Reynolds' reason for not asking to see the report, the fact remains that he did not. Plaintiff presents no argument that would convince the court that the IDC is obligated to offer the staff representative the report absent a request from the representative. Therefore, there are no facts to support a claim

---

**6.** The document purports to be an affidavit signed by J.L. Reynolds. It is not notarized and does not contain the language necessary to give an unsworn declaration the force of an affidavit. *See* 28 U.S.C. § 1746. Nevertheless, it is referenced by the court simply to show that there is no genuine issue of material fact with respect to the investigative report which plaintiff was eager to obtain.

that the IDC unconstitutionally denied plaintiff the opportunity to present a copy of the investigative report in his defense.

 As to the documents which plaintiff did have in his possession but which he complains were ignored by defendants, the unsworn declaration of defendant Williams states that the IDC "thumbed through" the documents plaintiff presented in his defense. According to Williams, some of these documents were familiar to the IDC. Likewise, the argument plaintiff intended the documents to support was familiar to the IDC, *i.e.* "the commonly used argument ... that the positive result in his case was due to cross-reactivity." Declaration of Williams at ¶ 10.

Again, plaintiff has submitted nothing which contradicts Williams' declaration. Plaintiff's own recollection of the hearing is that defendant Williams told plaintiff he had heard all of plaintiff's arguments concerning drug testing before. Although defendants may not have given plaintiff's documentary evidence the full and serious consideration that plaintiff would have liked, it is undisputed that the IDC was already familiar with the material plaintiff wished to present. It is also undisputed that he was given the opportunity at least to present what he had. On the basis of the undisputed facts, then, the court concludes that defendants met the procedural due process requirement of *Wolff* and of § 541.17(c) that the accused inmate be permitted to call witnesses and present documentary evidence on his behalf.

### 4. *Decision Based on Substantial Evidence*

 "Substantial evidence" has been defined by the Supreme Court as evidence which is "'... more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971), *quoting, Consolidated Edison Co. v. NLRB,* 305 U.S.

197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938). According to the declarations of each defendant in the instant case, the evidence on which the IDC based its finding that plaintiff was guilty of using marijuana was as follows:

a. The written account of the reporting officer which indicated that on 4/4/86 the Plaintiff had provided staff with urine sample # LEW–4867, which subsequent testing revealed it contained THC, the active ingredient of marijuana.

b. The fact that Plaintiff's signature appeared on the Urine Sample Log next to urine sample # LEW–4867, which indicated he had provided the sample in question.

c. And, the fact that the laboratory report received from PharmChem Laboratories indicated urine sample # LEW–4867 tested positive for THC, the active ingredient in marijuana.

Declaration of Williams at ¶ 11; Declaration of Wagner at ¶ 13; and Declaration of Hinderliter at ¶ 7.

None of the facts on which the IDC based its decision are controverted by plaintiff, and the reliability of the testing performed by PharmChem Laboratories is a matter about which this court has previously found there is no genuine issue.[7] The undisputed facts concerning plaintiff's submission of a urine sample in conjunction with the undisputed reliability of the PharmChem testing lead the court to find that the IDC based its decision on more than a mere scintilla of evidence and evidence which a reasonable person would deem adequate to support a conclusion.

Plaintiff would have the court find, however, that there is a genuine issue of material fact with respect to the evidence on which the IDC relied. According to plaintiff, there is a genuine issue as to the reliability of the test results obtained by PharmChem Laboratories. Plaintiff argues that he presented evidence to the IDC which supports the proposition that the medication he took can produce a false

---

7. *Frankenberry, et al. v. Carlson, et al.,* —— F.Supp. ——, No. 85–0547, slip op. at 10 (M.D.Pa. September 11, 1987) [Available on WESTLAW, 1987 WL 42,904]. Also, see the discussion at pages 800, 801, *infra.*

positive test result indicating the presence of THC. That evidence consisted of part of an article published by the National Organization for the Reform of Marijuana Laws, part of a Bureau of Prisons' Program Statement concerning drug testing procedure, plaintiff's own written statements containing his opinions and referring to others' opinions on the validity of drug testing, and a certification by a penitentiary official that plaintiff had received an anesthetic and Tylenol with codeine the day before he submitted his urine sample.

Defendants do not dispute that plaintiff received these medications or that traces of the medications were present in plaintiff's urine when PharmChem performed its test for THC. However, to refute plaintiff's claims that those medications could have caused a false positive test result with respect to THC, defendants have presented in support of their motion for summary judgment the unsworn declaration of Joyce Chang, director of toxicology for PharmChem Laboratories. According to Chang, PharmChem performs a test known as the "EMIT-d.a.u." test to determine whether THC is present in the subject urine. If the EMIT-d.a.u. test yields a positive result, a second test is performed to confirm the result of the EMIT-d.a.u. test. Chang states that the second test, known as the "high performance thin layer chromatography" test ("HPTLC"), uses an entirely different methodology than the EMIT-d.a.u. test. Only if the second test confirms the result of the EMIT-d.a.u. test does Pharm-Chem report a positive result for THC. With respect to the possibility of false positive test results, Chang makes the following statement:

Although numerous scientific studies have observed that the EMIT-d.a.u. assay for cannabinoids does *not* react to a significant extent with substances other than cannabinoids, occasion [sic] misinformation or misimpressions remain regarding whether certain diets and habits, or various medications such as acetaminophen (Tylenol) or codeine, could produce a false positive result with this test. I personally have not observed Tylenol or codeine to cause a positive response with the EMIT-d.a.u. test for cannabinoids, nor have there been any reports in the scientific literature differing from my knowledge concerning this matter. *Moreover with a double testing procedure, any interfering substance would have to influence both methods to generate a false positive result, and this outcome is extremely unlikely since the two testing methods are based upon completely different scientific principles* [emphasis supplied]. Finally, the HPTLC second test procedure used by PharmChem focuses on one specific metabolite, THC–9–COOH, which research has shown to be the major urinary cannabinoid following the use of marijuana; this is the same specie of cannabinoid usually identified by the GC/MS test, another highly specific method. Accordingly, its confirmed identification represents the single most reliable and distinctive index of cannabinoid presence in urine, and is definitive in establishing the prior use of marijuana.

Declaration of Chang at ¶ 15 (emphasis supplied).

The court finds that Chang's declarations concerning the near impossibility of false positive results being produced by two different testing procedures are not controverted by the materials plaintiff has filed in support of his complaint and in opposition to the motion for summary judgment. The affidavit of David Greenblatt and the Drug Law Report published by the National Organization for the Reform of Marijuana Laws are concerned solely with the reliability of the EMIT-d.a.u. test; thus, they do not raise a genuine issue of material fact as to the reliability of the results of EMIT-d.a.u. testing, when those results are confirmed by the HPTLC test. Similarly, the "declaration" of Thomas Rejent addresses the possibility of false positive test results only with respect to the EMIT test. To the extent that Rejent's statement may confront the reliability of EMIT-d.a.u. test results as confirmed by HPTLC testing, the statement contains legal conclusions and does not demonstrate the existence of a genuine issue of material fact.

In summary, the evidence produced by plaintiff on his behalf before the IDC did not constitute conflicting evidence which, by virtue of its greater weight, compelled the IDC to find in his favor. Satisfied that the undisputed declaration of Joyce Chang shows that false positive test results from combined EMIT-d.a.u. and HPTLC testing are highly unlikely, the court concludes that the IDC's findings satisfied the evidentiary element of procedural due process.

Plaintiff argues that the credibility of Chang's affidavit is suspect because of her role in developing the EMIT-d.a.u. test. In so arguing, plaintiff ignores Chang's statements concerning the impact of HPTLC confirmation on EMIT-d.a.u. testing. No allegations of bias on Chang's part are raised with respect to HPTLC testing, and it is on the basis of her statements regarding confirmation that the court is satisfied as to the substantiality of a positive test result for purposes of prison disciplinary proceedings. Thus, plaintiff's allegations of bias as to a portion of Chang's declaration do not persuade the court to reject the declaration. Plaintiff also argues that a genuine issue exists as to whether Pharm-Chem knew at the time it tested plaintiff's urine sample that plaintiff had taken Tylenol with codeine and had received an anesthetic. Having found it to be undisputed that false positive results from combined EMIT-d.a.u. and HPTLC tests are highly unlikely, the court further finds that any dispute as to whether prison officials informed PharmChem of plaintiff's use of Tylenol with codeine and an anesthetic is immaterial.

### 5. Written Statement

Plaintiff does not contend that defendants failed to produce the written statement required by *Wolff* and § 541.17(g), and the exhibits attached to the various unsworn declarations submitted by defendants clearly show that this requirement was satisfied. *See* Declaration of Williams, Attachment No. 6 and Declaration of Wagner, Attachment No. 4.

*Conclusion*

Under the law governing the procedural due process to which plaintiff was entitled in his hearing before the IDC, the court finds that there is no genuine issue of material fact. Further, having found that defendants satisfied each of the procedural due process requirements set forth in *Wolff* and in the Bureau of Prisons' regulations, the court concludes that defendants are entitled to judgment as a matter of law. Therefore, the court will grant defendants' motion for summary judgment.