John Arthur MACLEAN

v.

**T.J. SECOR and Pat McNabb.**

**Civ.A. No. 93–2383.**

United States District Court,
E.D. Pennsylvania.

Feb. 14, 1995.

Edward M. Posner, Peter S. Paine, III, Drinker, Biddle & Reath Broad & Chestnut Streets, Philadelphia, PA, for plaintiff.

Vanessa Garrett Harley, James G. Sheehan, U.S. Attorney's Office, Civ. Div., Karen Elizabeth Rompala, Asst. U.S. Atty., Philadelphia, for defendant.

### MEMORANDUM AND ORDER

ANITA B. BRODY, District Judge.

Plaintiff, through appointed counsel, brings this action pursuant to the doctrine announced in the Supreme Court's decision in *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), alleging that defendants, two correctional officers at the Federal Correctional Institution ("FCI")—Schuylkill, violated his constitutional rights while he was an inmate there. Specifically, plaintiff alleges that defendants violated his Fifth Amendment and Eighth Amendment rights by verbally threatening him (Counts I & III) and violated his Fifth Amendment rights by confining him to administrative detention for 19 days without a valid reason (Count II). Plaintiff also asserts a claim for intentional infliction of emotional distress based on these allegations (Count IV).

Before me now is defendants' motion to dismiss or, in the alternative, for summary judgment. Defendants' motion argues both the facial inadequacy of plaintiff's claims and the defendants' qualified immunity from suit on these claims. I will treat this motion as one for summary judgment because I must consider matters outside the pleadings. Fed. R.Civ.P. 12(b). I find that plaintiff's Fifth Amendment and Eighth Amendment claims based on defendants' alleged verbal threats do not raise claims of constitutional magni-tude. Accordingly, I will enter summary judgment in favor of defendants on these claims. As to plaintiff's Fifth Amendment claim based on his confinement in administrative detention, I find that plaintiff enjoys a liberty interest in a timely hearing to consider the propriety of his detention but that, as this liberty interest was not clearly established at the time of his confinement, defendants are entitled to qualified immunity. Consequently, I will grant summary judgment for defendants on that claim as well. Finally, I will enter summary judgment for defendants on plaintiff's intentional infliction of emotional distress claim because that claim is governed—and here defeated—by the Federal Tort Claims Act.

### I. STATEMENT OF FACTS

The following facts are either undisputed or drawn from plaintiff's version of events. Plaintiff, now an inmate at the Arizona Department of Corrections, was incarcerated at FCI Schuylkill in Minersville, Pennsylvania, from August 21, 1992, to May 17, 1993. Prior to his incarceration at FCI Schuylkill, plaintiff was an inmate at FCI Tucson, in Arizona, but was transferred to FCI Schuylkill when his personal security was jeopardized by the circulation among the FCI Tucson population of an article in "People" magazine identifying plaintiff as the notorious "Gentle Rapist."

On February 11, 1993, plaintiff was called into the office of defendant Pat McNabb, a Captain at FCI Schuylkill. There, plaintiff was accused of having violated federal Bureau of Prisons ("BOP") regulations by writing a letter to a female prison staff member that addressed her as "Goldilocks," and was interrogated about that alleged rules violation. Defendant T.J. Secor, a Lieutenant at FCI Schuylkill, was present in McNabb's office when plaintiff was thus confronted. After being accused of having written the "Goldilocks" letter, plaintiff alleges that he was verbally threatened and abused by McNabb and Secor, who told him, in effect, that because he was a known sex offender he need fear for his physical safety for the duration of his incarceration anywhere within the federal BOP system. As alleged by

plaintiff, McNabb told plaintiff, "Everyone here knows all about you and what a piece of s— you are, a real scumbag." Pl.'s Resp. to Defs.' Mot. for Summ. J. at 3. Secor is alleged to have added, "We've got prisons for scum like you and we're going to see to it you're sent to Lewisburg or ELReno [sic] or someplace where pieces of s— like you belong. I'm going to see to it that you are taken care of." *Id.* at 3–4.[1]

At the end of this altercation in McNabb's office, Secor handcuffed plaintiff and placed him in administrative detention pending an investigation into the "Goldilocks" incident. According to plaintiff, Secor at this point admitted to plaintiff that there was no valid reason for confining plaintiff to administrative detention, declaring, "I [Secor] don't even have a 'shot' [prison parlance for an incident report] for this piece of s—, but I'll come up with something." *Id.* at 8 n. 11. Four days later, on February 15, Secor filed an incident report charging plaintiff with "Making a Sexual Proposal to Staff/Female," a violation of BOP regulations. Thereafter, the matter was referred to the prison's Unit Disciplinary Committee ("UDC") for an initial hearing pursuant to BOP regulations. After the hearing, the UDC expunged the incident report filed against plaintiff because the report had not been authored by the prison official who witnessed the alleged violation. On March 1, 1993, some 19 calendar days after being placed in administrative detention, plaintiff was released back into the general prison population at FCI Schuylkill. On May 17, 1993, plaintiff was transferred to FCI Raybrook, New York, because his safety at FCI Schuylkill had been jeopardized by circulation there of the same "People" magazine article that had resulted in his transfer from FCI Tucson.

\* \* \* \* \* \*

Plaintiff instituted this suit by filing his original complaint *pro se.* Defendants responded with their first motion to dismiss or, in the alternative, for summary judgment. Because I believed plaintiff might have meritorious claims, I appointed counsel for him. Through appointed counsel, plaintiff filed an amended complaint, to which defendants responded with the instant motion. This motion has now been fully briefed and is ready for adjudication.

## II. DISCUSSION

Based on the foregoing facts, plaintiff asserts what boil down to the following three claims against defendants: (i) defendants' verbal threats to plaintiff's physical security violated his Fifth Amendment due process rights and constituted cruel and unusual punishment in violation of his Eighth Amendment rights (Counts I & III); (ii) defendants, by confining plaintiff to administrative detention for no valid reason for 19 days, violated plaintiff's Fifth Amendment due process rights (Count II); and (iii) defendants' actions in threatening and improperly confining plaintiff constitute the tort of intentional infliction of emotional distress (Count IV). I address these claims *seriatim.* Because there is no dispute of material fact about any of these claims, summary judgment is proper here. Fed.R.Civ.P. 56(c).

### A. *Verbal Threats*

 It is well established that verbal harassment or threats of the sort detailed above will not, without some reinforcing act accompanying them, state a constitutional claim. *See Murray v. Woodburn,* 809 F.Supp. 383, 384 (E.D.Pa.1993) ("Mean harassment ... is insufficient to state a constitutional deprivation."); *Prisoners' Legal Ass'n v. Roberson,* 822 F.Supp. 185, 189 (D.N.J.1993) ("[V]erbal harassment does not

---

1. The quotations attributed to defendants by plaintiff were excerpted from plaintiff's original, *pro se* complaint in this action, filed before I appointed counsel for him. Plaintiff's allegations based upon these quotations are thus unsworn. Plaintiff's counsel, however, has represented that, due to plaintiff's incarceration out of state, counsel has been unable to procure from plaintiff a sworn affidavit as to the substance of defendants' statements. Pl.'s Resp. to Defs.' Mot. for

Summ.J. at 4 n. 5. Plaintiff's counsel has further represented that, in a telephone conversation with plaintiff, plaintiff re-affirmed to counsel the truth of the allegations resting upon these quotations. *Id.* Because of the difficulties entailed in procuring a sworn statement under the circumstances present here, I accept counsel's representations and assume, for the purposes of this motion, that the statements plaintiff attributes to defendants are properly verified.

give rise to a constitutional violation enforceable under § 1983."); *Collins v. Cundy*, 603 F.2d 825, 826 (10th Cir.1979) (allegations that sheriff laughed at prisoner and threatened to hang him did not state claim for constitutional violation); *Oltarzewski v. Ruggiero*, 830 F.2d 136, 139 (9th Cir.1987) (allegations of vulgarity did not state constitutional claim).[2] A constitutional claim based only on verbal threats will fail, moreover, whether it is asserted under the Eighth Amendment's ban on cruel and unusual punishment or under the Fifth Amendment's substantive due process clause. *See Prisoners' Legal Ass'n*, 822 F.Supp. at 189 (cruel and unusual punishment theory); *Pittsley v. Warish*, 927 F.2d 3, 7 (1st Cir.) (substantive due process theory), *cert. denied*, 502 U.S. 879, 112 S.Ct. 226, 116 L.Ed.2d 183 (1991).

Plaintiff appears to concede in his papers that "mere" verbal threats do not state a constitutional claim. Rather, he contends that his special status as a known sex offender converted defendants' verbal threats against him into something actionable. Plaintiff, however, has cited no authority that carves out a distinction for sex offenders or any other class of convicts, and I have been unable to locate any. Furthermore, at least one court has held that an inmate's particular vulnerability to verbal harassment could not be considered a sufficient basis for overlooking the established doctrine rejecting constitutional claims based solely on such harassment. *See Murray v. Woodburn*, 809 F.Supp. at 384 (examining whether, "given [plaintiff's] vulnerabilities, provoking him [with laughter] to punch a prison official in the nose and then using the incident as a basis for committing him state[d] a claim against a prison official," and finding that it did not). If plaintiff's allegations are true— and defendants deny that they are—defendants' conduct in verbally threatening him is certainly reprehensible. Nonetheless, the

above-cited authorities make clear that it is not actionable under the Constitution.

### B. *Administrative Detention*

Next, plaintiff asserts that defendants improperly confined him to administrative detention and thereby violated his Fifth Amendment due process rights. Specifically, the relevant portion of the complaint alleges: "McNabb and Secor denied MacLean his rights to due process under the Fifth Amendment of the United States Constitution by confining him to Administrative Detention for 19 days for no valid reason." Am.Compl. ¶ 30. This allegation can be read as asserting either of two possible claims: (i) that the asserted basis for plaintiff's confinement—investigation into plaintiff's "Goldilocks" letter—amounted to a mere pretext or trumped-up charge, or (ii) that plaintiff was confined for an undue length of time, 19 calendar days, *without the hearing required by applicable BOP regulations*. I address each possibility in turn.

### 1. *Trumped–Up Basis for Confinement*

Insofar as plaintiff's claim alleges that defendants fabricated the "Goldilocks" charge against him as a pretext for confining him to administrative detention, it can be disposed of quickly. As long as an inmate charged with misconduct has been afforded the procedural due process protections required by the Supreme Court's decision in *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), an allegation that he was falsely accused does not state a claim for violation of his constitutional rights, at least where, as here, the false charges are not alleged to have been filed in retaliation for the inmate's exercise of a constitutional right. *Flanagan v. Shively*, 783 F.Supp. 922, 931–32 (M.D.Pa.), *aff'd*, 980 F.2d 722 (3d Cir.1992), *cert. denied*, —— U.S. ——, 114 S.Ct. 95, 126 L.Ed.2d 62 (1993); *Wilson v. Maben*, 676 F.Supp. 581, 584 (M.D.Pa.1987);

---

**2.** The authorities cited by plaintiff, which either involved some action that escalated the threat beyond mere words or did not deal with verbal threats at all, are fully in accord with this settled principle. *See Northington v. Jackson*, 973 F.2d 1518 (10th Cir.1992) (guard put revolver to inmate's head and threatened to shoot); *Douglas v. Marino*, 684 F.Supp. 395 (D.N.J.1988) (inmate threatened with kitchen knife by prison employee); *Scher v. Engelke*, 943 F.2d 921 (8th Cir. 1991) (allegations of repeated searches of prisoner's cell in retaliation for assisting in reporting prison corruption stated constitutional claim), *cert. denied*, 503 U.S. 932, 112 S.Ct. 1516, 117 L.Ed.2d 652 (1992).

*Vines v. Howard,* 658 F.Supp. 34, 37 (E.D.Pa.1987); *Freeman v. Rideout,* 808 F.2d 949, 952–54 (2d Cir.1986), *cert. denied,* 485 U.S. 982, 108 S.Ct. 1273, 99 L.Ed.2d 484 (1988). The procedural protections that must be afforded an inmate under *Wolff* are: written notice of the charges at least 24 hours in advance of the hearing; a hearing before an impartial tribunal; a limited opportunity to call witnesses and present documentary evidence; and a written statement by the factfinders of the reasons for any decision on the charges. *Wolff,* 418 U.S. at 563–71, 94 S.Ct. at 2978–82; *Vines,* 658 F.Supp. at 35.

■ These principles dictate dismissal of plaintiff's claim here to the extent that it accuses defendants of filing false charges against him. Plaintiff does not suggest here that defendants charged him with "Making a Sexual Proposal to Staff/Female" in retaliation for his exercise of a constitutional right. Plaintiff also does not allege that the procedures applied at his initial hearing before the UDC did not comport with the requirements of *Wolff.* While plaintiff does contend that he should have been accorded the *Wolff* procedures prior to his initial hearing on the charges, *see* Pl.'s Resp. to Defs.' Mot. to Dismiss or for Summ.J. at 10, that contention is without merit. The Constitution does not require that prison officials refrain from confining a prisoner to administrative detention until the hearing at which the *Wolff* procedures apply. It demands only that such a hearing be held within a reasonable time after administrative detention has been ordered. *See Layton v. Beyer,* 953 F.2d 839, 847 (3d Cir.1992) ("Not every deprivation of liberty requires a pre-revocation hearing.... [T]he liberty interest in remaining part of the general prison population requires a post-revocation hearing only" within a reasonable time after confinement) (citing *Hewitt v. Helms,* 459 U.S. 460, 472, 103 S.Ct. 864, 871–72, 74 L.Ed.2d 675 (1983)).

Because plaintiff alleges neither that the charges against him were filed in retaliation for his exercise of a constitutional right nor that his initial hearing before the UDC failed to comport with the requirements of due process, his administrative detention claim cannot survive to the extent it alleges that the charges against him were fabricated. Accordingly, this possible reading of his administrative detention claim is rejected.

### 2. *Untimely Hearing*

The other possible interpretation of plaintiff's administrative detention claim is that plaintiff was not afforded an initial hearing within a constitutionally permissible length of time after his confinement. As detailed below, I conclude that the applicable regulations governing plaintiff's administrative detention give rise to a liberty interest in a timely hearing. Defendants, however, are entitled to qualified immunity on this claim because, at the time plaintiff was detained, this liberty interest was not a "clearly established" right.

■ As I construe his complaint, plaintiff alleges that he was confined to administrative detention for 19 calendar days without a hearing. Whether plaintiff's due process rights were violated by a delay of this length depends on two subsidiary inquiries: (i) whether, as a threshold matter, plaintiff enjoys a cognizable liberty interest in remaining outside administrative detention, and (ii) if so, what process is due. *Layton,* 953 F.2d at 842, 849.[3] There is no liberty interest conferred directly by the Constitution in remaining outside administrative detention and part of the general prison population, *Hewitt,* 459 U.S. at 466–68, 103 S.Ct. at 868–69, but such an interest can be conferred by regulations having the force of law. *Cf. Layton,* 953 F.2d at 845–47 (New Jersey prison regulations created liberty interest in remaining outside administrative segregation). In the Third Circuit, a liberty interest in remaining outside administrative detention will arise from a regulation if: the regulation uses language of unmistakably mandatory

3. With regard to the first prong of the analysis, the relevant liberty interest here might be characterized as an interest in a timely hearing upon being confined to administrative detention. Nonetheless, the Third Circuit's decision in *Lay-ton* makes clear that an untimely hearing claim should be analyzed as implicating the more general interest in remaining part of the general prison population. *Layton,* 953 F.2d at 845–47.

character, such as "shall," "will," or "must"; the regulation provides that detention will not be ordered absent "specified substantive predicates," *e.g.*, a finding of a "need for control" or order; and the regulation deprives the decisionmaker of discretion to order detention in situations other than those falling within the specified substantive predicates. *Layton*, 953 F.2d at 846–48; *Banks v. Fauver*, 801 F.Supp. 1422, 1424–26 (D.N.J. 1992).

■ Applying this test to New Jersey's regulations governing administrative confinement in the "Prehearing Management Control Unit" of a state prison, the Third Circuit in *Layton* found a liberty interest on the part of inmates in remaining free of such confinement absent a finding that one of the regulations' predicates had been satisfied. *Layton*, 953 F.2d at 846–47. The features of the New Jersey regulations deemed to give rise to such an interest included: (i) the predicate requiring that detention decisions be based on "reasonable evidence" that the inmate presented an "immediate threat" to the safety of others, to the integrity of property, or to the "safe, secure and orderly operation" of the prison; (ii) the regulations' language providing that the inmate "shall" be given a hearing within five working days of confinement; and (iii) the language providing that the inmate "shall" be given notice of the hearing within 24 hours of confinement. *Id.* at 843. Furthermore, the court observed that the absence of a regulatory provision allowing prison officials to detain the inmate in the Prehearing Management Control Unit beyond the time allotted for a hearing was sufficient, as a matter of statutory construction, to deprive the prison officials of the discretion to do so. *Id.* at 846 n. 13.

The *Layton* analysis compels a similar conclusion here. The applicable regulations in this case · are the federal BOP regulations governing procedures for placement and hearings in administrative detention, codified at 28 C.F.R. §§ 541.22 (administrative detention) and 541.15 (initial hearing). These regulations detail the predicates necessary to support a determination that an inmate may be placed in segregation, and they establish the procedures triggered by such a determi-

nation. The operative predicates for a segregation decision under these regulations include the situations where the inmate is pending transfer, is a new commitment awaiting classification, or where

> "the inmate's continued presence in the general [prison] population poses a serious threat to life, property, self, staff, other inmates or to the security or orderly running of the institution and [where] the inmate:
>
> (1) [i]s pending a hearing for violation of [BOP] regulations;
>
> (2) [i]s pending an investigation of a violation of [BOP] regulations;
>
> (3) [i]s pending an investigation or trial for a criminal act;
>
> (4) [i]s pending transfer;
>
> (5) [r]equests admission … for the inmate's own protection, or staff determines that [administrative detention] is necessary for the inmate's own protection …; or
>
> (6) [i]s terminating confinement in disciplinary segregation and placement in general [prison] population is not prudent.…

§ 541.22(a). The BOP regulations also govern procedures to be followed after confinement to administrative detention, and they articulate such procedures in mandatory terms. Specifically, they provide that the Segregation Review Official "shall" perform periodic post-segregation reviews, § 541.22(c), and that the inmate "is entitled" to an initial hearing before the UDC, § 541.15. While the timing of the initial hearing is expressed in the somewhat qualified language of "ordinarily within three work days," § 541.15(b), the regulations proceed to detail the conditions necessary for extensions of that period: "good cause shown" and documented in the record of the hearing, § 541.15(k).

Collectively, the foregoing features of the BOP regulations work to circumscribe prison officials' discretion in administrative detention decisions. Under these regulations, an inmate has the right to expect that placement decisions will be made and post-placement procedures will be applied consistent with the specified predicates and standards. Thus, these regulations are sufficient to con-

fer a liberty interest here under *Layton.* In accord with this conclusion are decisions of other courts within this circuit and elsewhere. *See Von Kahl v. Brennan,* 855 F.Supp. 1413, 1417 (M.D.Pa.1994) (federal regulations confer liberty interest in remaining free of administrative detention) (citing *Frankenberry v. Williams,* 677 F.Supp. 793, 796 (M.D.Pa.), *aff'd,* 860 F.2d 1074 (3d Cir. 1988)); *Farmer v. Carlson,* 685 F.Supp. 1335, 1342 (M.D.Pa.1988) (assuming liberty interest created by administrative detention regulations); *Kimberlin v. Quinlan,* 774 F.Supp. 1, 8–9 (D.D.C.1991) (liberty interest created by administrative detention regulations), *rev'd on other grounds,* 6 F.3d 789 (D.C.Cir. 1993), *cert. granted,* — U.S. —, 115 S.Ct. 929, 130 L.Ed.2d 876 (1995); *Crowder v. True,* 845 F.Supp. 1250, 1252–54 (N.D.Ill. 1994) (analyzing language of administrative detention regulations and finding liberty interest created); *cf. Muhammad v. Carlson,* 845 F.2d 175, 178 (8th Cir.1988) (noting "unmistakably mandatory" language of administrative detention regulations), *cert. denied sub nom. Muhammad v. Quinlan,* 489 U.S. 1068, 109 S.Ct. 1346, 103 L.Ed.2d 814 (1989); *Vallina v. Meese,* 704 F.Supp. 769, 773 (E.D.Mich.1989) (assuming that administrative detention regulations accord measure of due process).

■ The case law on this point, however, defies characterization as "settled". Other courts have determined, contrary to my conclusion and that of the authorities just cited, that the BOP regulations governing administrative detention do not give rise to any protected liberty interest in remaining part of the general prison population. *See Franklin v. True,* No. 92 Civ. 604, 1994 WL 559228, at *3–*4 (N.D.Ill. Oct. 7, 1994) (analyzing federal administrative detention regulations and finding no liberty interest created); *Enigwe v. Nugent,* No. 92 Civ. 5339, 1993 WL 54489, at *1 (E.D.Pa. Feb. 26, 1993) (suggesting no liberty interest created by federal administrative detention regulation); *Awalt*

*v. Whalen,* 809 F.Supp. 414, 416 (E.D.Va. 1992) (administrative detention regulations create no liberty interest in immediate release after hearing); *Moore v. Ham,* 986 F.2d 1428 (Table), 1993 WL 5874, at *1 (10th Cir. Jan. 12, 1993) (unpublished decision) (administrative detention regulations do not give rise to protected liberty interest), *cert. denied,* — U.S. —, 114 S.Ct. 98, 126 L.Ed.2d 65, *reh'g denied,* — U.S. —, 114 S.Ct. 460, 126 L.Ed.2d 392 (1993); *Eggleton v. Gluch,* 916 F.2d 712 (Table), 1990 WL 155316, at *3 (6th Cir. Oct. 15, 1990) (unpublished decision) (administrative detention regulations do not give rise to liberty interest in immediate release after hearing).[4] Thus, my finding that plaintiff enjoys a protected liberty interest here is but a hollow victory, for that interest cannot be deemed to have been so "clearly established" at the time of plaintiff's detention as to defeat defendants' claim of qualified immunity.

Qualified immunity is available to a public official if the official's conduct did not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *Bennis v. Gable,* 823 F.2d 723, 732 (3d Cir.1987). The "clearly established" requirement, the Third Circuit has observed, contains within it the ambiguity of "whether conflicting opinions from different district courts, or even a split decision in the court of appeals, makes the law sufficiently unclear to mandate the granting of immunity." *People of Three Mile Island v. Nuclear Reg. Comm'rs,* 747 F.2d 139, 144 (3d Cir.1984). In *Three Mile Island,* the Third Circuit affirmed a grant of qualified immunity in favor of defendant Nuclear Regulatory Commissioners, who had failed to hold a hearing prior to issuing an order that specified a decontamination procedure to be followed in the wake of the Three Mile Island disaster. The court's ruling there rested on the unsettled state of the law on the prior

---

4. I am aware that citation of unpublished opinions is generally "disfavored." Nonetheless, both the Sixth and Tenth Circuits' rules permit such citation where, as here, the unpublished opinion has "persuasive" or "precedential" value on a material issue. *See* 6th Cir. Rule 24(b)

(*cited in Oviedo v. Jago,* 809 F.2d 326, 329 n. 3 (6th Cir.1987) (following unpublished decision)); 10th Cir. General Order of Nov. 29, 1993, Suspending 10th Cir. Rule 36.3 until Dec. 31, 1995, or Further Order (allowing citation to unpublished opinions where appropriate).

hearing requirement at the time the order in question was issued. *Id.* at 147. While it declined to resolve the "conflicting case law" ambiguity it had identified, *Three Mile Island* is nonetheless instructive here in two respects. First, it acknowledged the substantially narrower dimension of the inquiry into whether a right is "clearly established" such that liability should be imposed on a public official, as distinguished from the underlying inquiry of whether the right violated exists at all. *Id.* at 147. Second, it placed special emphasis on authority—including out-of-circuit authority if necessary—addressing the precise question of whether the existing state of the law at the relevant time was clear or confused. *Id.*

Applying these principles, I find that the liberty interest conferred by the BOP administrative detention regulations was not "clearly established" in February 1993, the time period in question. First, the case law within the Third Circuit cannot be deemed to have clearly established such an interest by that time. To the extent that any court in this district had indicated a position on these regulations, that indication suggested that no liberty interest was conferred by these regulations. *See Enigwe v. Nugent,* No. 92 Civ. 5339, 1993 WL 54489, at *1 (E.D.Pa. Feb. 26, 1993) (rejecting contention that administrative detention regulations gave rise to liberty interest). That court, moreover, upheld the qualified immunity of defendants there, a prison warden and a prosecutor, finding that their conduct in confining an inmate for "reasons relating to the inmate's security" violated no clearly established constitutional right. *Id.* at *2.

Turning outside this district, *Von Kahl v. Brennan,* 855 F.Supp. 1413 (M.D.Pa.1994), a case which did find such an interest, was decided after the events in question here. In reaching its conclusion, the court in *Von Kahl* relied on a 1988 case from its own district, *Frankenberry v. Williams,* 677 F.Supp. 793, 796 (M.D.Pa.), which was affirmed without opinion by the Third Circuit that same year, 860 F.2d 1074. The regula-

tions addressed in *Frankenberry,* however, were different BOP regulations, governing disciplinary rather than administrative segregation. *Frankenberry,* 677 F.Supp. at 796 (addressing disciplinary segregation regulations codified at 28 C.F.R. § 541.20(a)). Thus, any attempt to read *Frankenberry* as conclusive on the issue here would have been inconsistent with the Third Circuit's exhortation to focus on the "precise regulation" asserted as creating the liberty interest. *Layton,* 953 F.2d at 846. Further undermining attempts to draw analogies from *Frankenberry* is the fundamentally administrative character of the regulations at issue here. As distinguished from disciplinary measures such as those implicated in *Frankenberry,* administrative actions are recognized as being of a constitutionally lower order. *See Hewitt,* 459 U.S. at 468, 103 S.Ct. at 869 ("It is plain that the transfer of an inmate to less amenable and more restrictive quarters for nonpunitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence."). Thus, *Frankenberry* is too slender a reed on which to hang liability.

Nor can the interest asserted by plaintiff be said to have been clearly established by *Farmer v. Carlson,* 685 F.Supp. 1335, 1342–43 (M.D.Pa.1988), a case decided the same year as *Frankenberry.* *Farmer* did not decide whether the BOP administrative regulations conferred a liberty interest, but merely assumed it *arguendo.* *Id.*

Were defendants to have looked to case law outside the Third Circuit, they would not have found the requisite clarity there either. By February 1993, both the Sixth and Tenth Circuits had refused to find a liberty interest in the BOP administrative detention regulations. *Moore v. Ham,* 986 F.2d 1428 (Table), 1993 WL 5874, at *1 (10th Cir. Jan. 12, 1993) (unpublished decision); *Eggleton v. Gluch,* 916 F.2d 712 (Table), 1990 WL 155316, at *3 (6th Cir. Oct. 15, 1990) (unpublished decision). The conclusion of those circuits, furthermore, had also been reached by a district court within the Fourth Circuit. *Awalt v. Whalen,* 809 F.Supp. 414, 416 (E.D.Va.1992).[5]

---

**5.** Like *Layton,* these decisions finding no liberty interest applied, in substance, the principles embodied in the Supreme Court's decision in *Hewitt*

*v. Helms. See Awalt,* 809 F.Supp. at 416; *Moore,* 1993 WL 5874, at *1. Thus, while *Layton* may have clarified the standard to be applied to ad-

Conversely, the out-of-circuit authority arrayed against these cases amounted only to one district court case that had interpreted these regulations to confer a liberty interest, *Kimberlin v. Quinlan*, 774 F.Supp. 1, 8–9 (D.D.C.1991), one district court that assumed the creation of such an interest *arguendo*, *Vallina v. Meese*, 704 F.Supp. 769, 773 (E.D.Mich.1989), and one circuit court that simply noted the "unmistakably mandatory" character of the regulations' language, *Muhammad v. Carlson*, 845 F.2d 175, 178 (8th Cir.1988).

Finally, I cannot ignore the finding of the one court that has undertaken the precise task before me now, which characterized as confused the state of the law on whether the BOP administrative detention regulations confer a liberty interest. *See Crowder v. True*, 845 F.Supp. 1250, 1252–54 (N.D.Ill. 1994). The *Crowder* court concluded, after surveying the law on this issue, that there was "considerable doubt that [a liberty interest arising from the BOP regulations] exists at the constitutional level." *Id.* at 1254. Thus, notwithstanding its ruling that the plaintiff there had stated a constitutional claim based on the defendant correctional officers' failure to provide him the post-detention review mandated by BOP administrative detention regulations, the court in *Crowder* upheld the correctional officers' qualified immunity from suit. *Id.*

In sum, the case law on this issue, both within and without the Third Circuit, was unsettled in February 1993. This is confirmed by the only decision to have characterized the state of existing authority. Mindful that the standard necessary to overcome immunity is substantially higher than that necessary to find an underlying right in the first instance, I am compelled to hold that the interest asserted by plaintiff was not clearly established at the time in question. Accordingly, insofar as plaintiff has stated a claim under the Fifth Amendment based on

defendants' failure to accord him a timely hearing after he was confined to administrative detention, defendants are entitled to qualified immunity.[6]

### C. Intentional Infliction of Emotional Distress

■ Finally, plaintiff asserts a claim against defendants in their individual capacities for intentional infliction of emotional distress, which appears to be pled under tort principles of Pennsylvania state common law. Am.Compl. ¶¶ 2, 39–41 (invoking pendent jurisdiction and alleging, without any citation to federal law, that defendants' conduct was "extreme and outrageous"). Because this claim sounds in common law tort rather than under the United States Constitution, it is governed by the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2679. As discussed below, plaintiff's failure to satisfy the exhaustion requirements under the FTCA mandates dismissal of this claim here.

■ In 1988, Congress amended the FTCA to require substitution of the United States as the exclusive defendant whenever federal employees are sued on common law tort claims arising out of acts within the scope of their federal employment. *See* 28 U.S.C. § 2679(b)(1); *Kimbro v. United States*, 767 F.Supp. 6, 7–8 (D.D.C.1991), *rev'd on other grounds*, 30 F.3d 1501 (D.C.Cir. 1994). This amendment, known as the Federal Employees Liability Reform and Tort Compensation Act of 1988 ("FELRTCA"), provides that the FTCA's remedies are "exclusive of any other civil action or proceeding for money damages." 28 U.S.C. § 2679(b)(1). Pursuant to the FELRTCA, the Attorney General or his designee may certify that a defendant federal employee was acting within the scope of his or her employment at the time of the incident in question, and, if the court so finds, the United States is substituted as the defendant. 28

---

ministrative detention regulations, its reasoning, resting on *Hewitt*, cannot be said to have resolved the question of whether the BOP regulations at issue here conferred a liberty interest.

6. Because I decide that defendants are entitled to qualified immunity on the initial "liberty interest" prong of the due process analysis, I do not reach the second, "process due" prong of that analysis.

U.S.C. § 2679(d)(1).[7] Thereafter, the action proceeds as if the United States had been sued under the FTCA in the first instance. 28 U.S.C. § 2679(d)(4). The Attorney General's scope-of-employment certification is accorded deference and is subject to "limited judicial review." *Biase v. Kaplan,* 852 F.Supp. 268, 291 (D.N.J.1994). It constitutes *prima facie* evidence that the employee's challenged conduct occurred within the scope of employment, but it is not conclusive on the point. *Schrob v. Catterson,* 967 F.2d 929, 936 (3d Cir.1992); *Haas v. Barto,* 829 F.Supp. 729, 733 (M.D.Pa.1993), *aff'd,* 27 F.3d 557 (3d Cir.1994). "Thus, a plaintiff challenging the certification has the burden of coming forward with specific facts rebutting it." *Schrob,* 967 F.2d at 936.

Here, the United States Attorney for the Eastern District of Pennsylvania has filed the papers on behalf of defendants. These papers effectively certify that the defendants were acting within the scope of their employment in performing the acts that gave rise to this lawsuit, *see* Defs.' Mem. in Support of Mot. to Dismiss or for Summ.J. at 5, and I accept them as such. Plaintiff, for his part, does not contest the government's certification, nor does he set forth any facts to suggest that defendants were acting outside the scope of their employment either in interrogating him or in confining him to administrative detention.

The scope-of-employment determination under the FELRTCA is governed by "the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b); *Melo v. Hafer,* 912 F.2d 628, 642 (3d Cir.1990), *aff'd,* 502 U.S. 21, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991). Thus, Pennsylvania law controls here. Pennsylvania courts look to the general standard set forth in Restatement (Second) of Agency § 228 in determining whether an employee's act was undertaken within the scope of employment. *Aliota v. Graham,* 984 F.2d 1350, 1358 (3d Cir.) (citing *Butler v. Flo–Ron Vending Co.,* 383 Pa.Super. 633, 557 A.2d 730, 736 *appeal denied,* 523 Pa. 646, 567 A.2d 650 (1989)), *cert. denied,* — U.S. —, 114 S.Ct. 68, 126 L.Ed.2d 37 (1993); *Ad-*

*vanced Power Sys., Inc. v. Hi–Tech Sys., Inc.,* No. 90 Civ. 7952, 1994 WL 116121, at *3 (E.D.Pa. Mar. 21, 1994) (Pollak, J.). That Restatement section reads:

(1) Conduct of a servant is within the scope of employment if, but only if: (a) it is of the kind he is authorized to perform; (b) it occurs substantially within the authorized time and space limits; (c) it is actuated, at least in part, by a purpose to serve the master; and (d) if force is intentionally used by the servant against another, the use of force is not unexpectable by the master. (2) Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time and space limits, or too little actuated by a purpose to serve the master.

Restatement (Second) of Agency § 228 (*quoted in Advanced Power Sys. Inc.,* 1994 WL 116121, at *3).

The defendants' conduct was, under this standard, within the scope of their employment. First, as officials charged with investigating prison violations and with maintaining institutional security and order, defendants were plainly authorized to interrogate plaintiff about his "Goldilocks" infraction and to confine him to administrative detention pending an investigation of that infraction. *See* McNabb Aff. ¶ 1 & Secor Aff. ¶ 1 (defendants' duties include supervisory and investigative functions necessary to maintain prison security); 28 C.F.R. § 541.22(a)(2) (inmate can be confined to administrative detention pending investigation. of rules infraction). Second, the Restatement's time and space limitations are met here, as defendants were on duty at their regular stations when the challenged conduct occurred. *Cf. Advanced Power Sys. Inc.,* 1994 WL 116121, at *4. Finally, because the defendants' conduct here was admittedly precipitated by plaintiff's "Goldilocks" letter to a female staff member of the prison, the defendants' conduct was at least in part actuated by the desire to promote prison security, and was thus in furtherance of their employer's interest. *Cf. Parker v. Fogg,* No. 85 Civ. 177, 1994 WL

---

**7.** The Attorney General has delegated his certification authority under the FELRTCA to the Unit- ed States Attorneys. *See* 28 U.S.C. § 510; 28 C.F.R. § 15.3.

49696, at *8 (N.D.N.Y. Feb. 17, 1994) (New York statute conferring immunity for government acts taken "within scope of employment" barred inmate's tort claim against prison guards for beating administered in retaliation for inmate's alleged harassment of female member of prison staff); *Hoston v. Silbert*, 681 F.2d 876, 880 (D.C.Cir.1982) (fatal beating by U.S. Marshal of prisoner in Marshal's custody was with purpose of serving Marshal's employer and thus could form basis of *respondeat superior* claim, as "[a] Marshal's duties—escorting and supervising frequently hostile and potentially dangerous prisoners—create a strong likelihood of violent confrontation").

Because defendants' conduct was with the scope of their employment, it is appropriate to substitute the United States as the proper defendant on plaintiff's claim based on intentional infliction of emotional distress. 28 U.S.C. § 2679(d)(1). This substitution requires me to apply to plaintiff's tort claim the FTCA, which now governs that claim. 28 U.S.C. § 2679(d)(4).

 Administrative remedies must be exhausted before claims can be pursued under the FTCA. 28 U.S.C. § 2675(a). This exhaustion requirement is jurisdictional. *See, e.g., Biase*, 852 F.Supp. at 283 (citations omitted). Plaintiff has not alleged the exhaustion requirement here. Indeed, it seems that he cannot, as he does not dispute the government's flat assertion that "he failed to file an administrative claim as required by the FTCA." Defs.' Mem. in Support of Mot. to Dismiss or for Summ.J. at 6 n. 3. Because this fatal defect in plaintiff's tort claim thus appears to be more than a mere pleading error curable by further amendment, granting plaintiff leave to re-plead here is futile. *See Biase*, 852 F.Supp. at 283 n. 11 (where failure to allege exhaustion under FTCA appears incurable based on defendant's certification that no administrative claim has been filed by plaintiff, court need not afford plaintiff opportunity to cure exhaustion defect). Accordingly, I will dismiss with prejudice plaintiff's tort claim against defendants (or, more properly, against the United States), and I will enter summary judgment on that claim against plaintiff.

## III. CONCLUSION

For the foregoing reasons, I will grant defendants' motion to dismiss or, in the alternative, for summary judgment as to all claims.

**IT IS SO ORDERED.**